## CURTIS, RECEIVER OF ATLANTIC NATIONAL BANK OF PROVIDENCE, R. I. *v.* CONNLY ET AL.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE FIRST CIRCUIT.

No. 69. Argued November 16, 17, 1921.—Decided December 12, 1921.

1. The state statute of limitations applies to a suit in a federal court by a receiver of a national bank against its former directors to recover for losses sustained by the bank through improper loans and investments and dividends paid out of capital.   P. 262.
2. Such a suit being based on the common-law right of the bank, the statute will not be tolled upon the ground of fraudulent concealment of the cause of action (Gen. Laws, R. I., 1909, c. 284, § 7) where the bank was put on notice by the entries on its own books. P. 262.
3. Where the misrepresentations relied on for suspending the statute of limitations were the entering at their face value upon the books, and in reports made to the Comptroller and published, of loans and investments known by the defendant directors to be improper or worthless, *held:* (a) That the bank was chargeable with notice of the parties to whom loans had been made and the specific character of assets; (b) that the representations to be implied from the reports could not be taken as continuing after they had been superseded by later reports; (c) that the misrepresentations of value imported by the valuations on the books were not a concealment of the cause of action after new directors, not in conspiracy with the defendants, came upon the board and knew the facts, since their knowledge was imputable to the bank, even if they also proved unfaithful.   P. 264.
4. The running of a statute of limitations on a cause of action of a bank against directors will not be suspended by its fraudulent con-

cealment beyond a period in which new directors, performing their duty to learn the bank's affairs, would presumably have discovered it. P. 264.

5. The fiduciary relation between a bank and its directors ceased when they left the board. P. 264.

264 Fed. 650, affirmed.

APPEAL from a decree of the Circuit Court of Appeals affirming a decree of the District Court dismissing the bill, as to the appellees, in a suit brought by the appellant receiver to charge them with losses suffered by the bank.

*Mr. Edward F. McClennen,* with whom *Mr. George H. Huddy, Jr.,* was on the brief, for appellant.

*Mr. William W. Moss* and *Mr. Arthur M. Allen,* with whom *Mr. Percy W. Gardner, Mr. Edward A. Stockwell* and *Mr. Claude R. Branch* were on the briefs, for appellees.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill brought by a receiver of a national bank to recover from former directors of the bank for losses sustained by it because of dividends paid out of capital and improper loans and investments made by the defendants. The bill states with particularity the dates at which each defendant began and ceased to serve, and thus discloses that six of those named left office more than six years before August 2, 1916, when this suit was begun. On motion the bill was dismissed by the District Court as against these six on the ground that the statute of limitations of the State of Rhode Island was a bar. 259 Fed. 961, *sub nom. Curtis* v. *Metcalf.* The decree was affirmed by the Circuit Court of Appeals. 264 Fed. 650. The receiver appeals, contending that the bill states facts sufficient to suspend the running of the statute until within six years from the beginning of the suit.

There is no dispute that the statute of Rhode Island governs the case. *McClaine* v. *Rankin*, 197 U. S. 154. The only question argued is whether the bill brings the defendants within the exception to the general rule in Gen. Laws, 1909, c. 284, § 7: " If any person, liable to an action by another, shall fraudulently, by actual misrepresentation, conceal from him the existence of the cause of such action, said cause of action shall be deemed to accrue against the person so liable therefor, at the time when the person entitled to sue thereon shall first discover its existence." The misrepresentations charged are having the books and financial statements of the bank so kept and made as to show at their face value loans and investments known to be improper or worthless and thus to conceal the impairment of the capital of the bank. These books were exhibited to the examiners and reports thus falsely made were filed with the Comptroller of the Currency and published, and none of the facts was discovered by any other than the directors before 1913, and many of them not until the latter part of 1915. The over statement of assets is alleged to have grown from $50,000 in 1906 to $700,000 in 1913, when the bank was found to be insolvent and was put into the hands of a receiver. It is laid at $150,000 on January 12, 1909, when three of the appellees ceased to be directors; and when the other three left on January 11, 1910, at probably more than $200,000. The bank was then still solvent. The appellant says that these facts bring the case within the above § 7, and that no discovery of them appears until after August 3, 1910, that is, until within six years of this suit.

This suit is brought upon the common-law right of the bank to recover for acts that diminished its assets. Therefore the question is whether the bank's claim is barred. The bank of course must be charged with knowledge of

what appeared upon its books. It owned them; its stock-holders had a right to inspect them. *Guthrie* v. *Harkness,* 199 U. S. 148. Hence it would seem, as suggested by the District Judge, that so far as concerns investments of a kind that national banks are not allowed to make, the bank was chargeable with knowledge from the beginning and can found no claim upon them now. The parties to whom loans were made and the specific character of the assets must also have been known at all times, so that the only misrepresentations were those concerning the credit of the debtors implied by entering the claims at their face value in the books and reports. It is said that these were continuing representations, and no doubt the documents still read as they did when written. Whether they can be regarded as looking to an indefinite future reliance upon them or can be taken to have been relied upon for more than a short time except as to the belief of the directors at the moment is a different matter. The reports at least were superseded by later reports each of which imported a judgment as to then present values, not as to past.

The question, therefore, is narrowed to the entries on the books, and as to these, again as suggested by the District Judge, it is to be remembered that credits and the value of business paper or securities are variable. Many of those said to be overvalued were for short terms. Most of the renewals are stated to have been new extensions of credit—that is new judgments on present responsibility, superseding the old. We agree with the Courts below that the valuations on the books cannot be regarded as continuing in an effective sense. Three new directors came upon the board before August 3, 1910. It is alleged unmistakably in the bill that all the directors were chargeable with notice and did in fact know that the dividends were paid out of assets and not earned and that the im-

proper loans should be recalled. Even if otherwise the statute of limitations would not have run, which we do not imply, knowledge of the facts by the new directors was knowledge by the bank, and none the less that according to the bill they in their turn were unfaithful. It is not alleged that they conspired with the defendants whose case we are considering. They came to the board as the eyes of the bank. Anyone of them having notice was bound to do what he could to avert or diminish the loss. Indeed the bill seeks to charge one of them for not having done his duty. Notice to an officer, in the line of his duty, was notice to the bank. A single director like a single stockholder could proceed in the courts. *Joint Stock Discount Co.* v. *Brown*, L. R. 8 Eq. 381, 403.

The counsel for the plaintiff seemed to take the bill as admitting less than we have said in the way of knowledge. We are unable to read it otherwise than as we have indicated, but even if knowledge on the part of the new directors were not expressly charged, it was their business and duty in the year and seven months from the resignation of the first three to August 3, 1910, or the seven months after the resignation of the second three to the same date, to get some notion of the credits and assets of the bank. It does not appear that there would have been any difficulty in ascertaining at least enough to lead to further inquiry if they had. See *Wood* v. *Carpenter*, 101 U. S. 135. The statute of limitations must not be applied so narrowly that business men will be afraid to take directorships, and however this bill be read in its details it appears to us not to charge enough to deprive the appellees of the protection of the act. It is said that they stood in a fiduciary relation to the bank. But they were strangers to it when they left the board, more than six years before this suit was brought. We see no reason why the statute should not apply. See *Emerson* v. *Gaither*,

103 Md. 564. *Boyd* v. *Mutual Fire Association of Eau Claire,* 116 Wisc. 155. *Wallace* v. *Lincoln Savings Bank,* 89 Tenn. 630.

*Decree affirmed.*

MR. JUSTICE BRANDEIS took no part in the decision of this case.