**NITKEY et al. v. S. T. McKNIGHT CO. et al.**
**No. 10544.**

Circuit Court of Appeals, Eighth Circuit.
Feb. 10, 1937.

Rehearing Denied March 6, 1937.

Albert K. Stebbins, and Bloodgood, Stebbins & Bloodgood, all of Milwaukee, Wis., for appellants.

Kingman, Cross, Morley, Cant & Taylor and Harold G. Cant, all of Minneapolis, Minn., for appellees S. T. McKnight Co. and Merchants Trust Co. of St. Paul.

Einar Hoidale, Felix E. Moses, and A. C. Johnston, all of Minneapolis, Minn., for appellees Wentworth & Griffith, Inc., and Colyer G. Wentworth.

Frank Williams, of Minneapolis, Minn., for appellee county treasurer of Hennepin county, Minn.

R. G. Patton, of Minneapolis, Minn., for appellee register of titles of Hennepin county, Minn.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

On February 15, 1935, R. J. Nitkey and Lillian F. Nitkey, his wife, residents in and citizens of Illinois, brought this suit in equity in the District Court for the District of Minnesota against S. T. McKnight Company, Wentworth & Griffith, Inc., Colyer G. Wentworth, the Merchants Trust Company, the county treasurer of Hennepin county, Minn., the register of titles of Hennepin county, Minn., and Mary A. Clark, all citizens of Minnesota and domiciled therein, and all other persons unknown claiming any right, title, or interest in the real property called the McKnight building property, being three lots and the improvements thereon, in Minneapolis, Minn. The plaintiffs laid claim to the property themselves. The several named defendants filed motions to dismiss under Equity Rule 29 (28 U.S.C.A. following section 723) and the trial court sustained the motions and, dismissed the suit. The plaintiffs have appealed, and, under appropriate assignments of error, contend that the defendants should be required to answer the bill in equity and that there was error in sustaining the motions and dismissing the suit. They state in their brief that the matters which were set forth in their bill in equity did not lend themselves readily to brevity of statement, but that, in substance, the following facts were alleged:

"On December 17, 1928, R. J. Nitkey, one of the plaintiffs, and S. T. McKnight Company entered into a purported real estate purchase agreement whereby Nitkey agreed to purchase and McKnight Company agreed to sell a parcel of land, improved with a twelve-story office building, in the business section of the City of Minneapolis, Minnesota, commonly known as the 'McKnight Building property,' at an agreed price of $1,400,000.

"A subtle method of payment and security for payment was employed. Annexed to the contract of December 17th were two indentures of lease (covering separate adjacent parcels of the above real estate) wherein McKnight Company was designated as lessor and the name of the lessee left blank for then present purposes, the understanding being that either Nitkey or an operating company subsequently formed by him would be lessee. The leases were for a term of 99 years. It was provided that Nitkey was to pay to McKnight Company an annual ground rental of $50,000, and, in addition thereto, the sum of $10,476.23 annually. Payments were to commence on January 1, 1929, and to continue for the calendar years 1929 to 1954, both inclusive. The annual payments of $10,476.23, with accumulations and additions, compounded at 5 per cent annually, were to create a sinking fund equivalent to $500,000 at the end of 25 years, which fund might, at the option of Nitkey, be applied upon the agreed purchase price of the property on January 1, 1954, but not prior to such date.

"The leases described above were dated as of January 1, 1929, and it was provided in the real estate purchase agreement that all the rents and profits from the property were to inure to the use and benefit of Nitkey from and after January 1, 1929.

"On the execution of the agreement of December 17, 1928, the plaintiff, R. J. Nitkey, paid to the firm of Wentworth & Griffith, Inc., designated in the agreement as brokers, the sum of $25,000, which latter sum was to be paid over to defendant, Merchants Trust Company of St. Paul, as escrow agent and depository, and was to be used for no other purpose. It is alleged upon information and belief in paragraph twenty-second of the bill that sum of $25,000 so paid by plaintiff, R. J. Nitkey, was (upon receipt thereof from plaintiff) paid over by Wentworth & Griffith, Inc. and Colyer G. Wentworth, to defendant S. T. McKnight Company, in violation of the terms and conditions of the payment, contrary to the terms of the purchase contract, and without the consent of Mr. Nitkey.

"It was further provided in the agreement of December 17, 1928, that Nitkey should, on or before February 15, 1929, pay to Merchants Trust Company of St. Paul, as escrow agent and depository, the sum of $375,000, with interest thereon at 5 per cent from January 1, 1929. Plaintiff being unable to perform this obligation at the due date, foreclosure was threatened, whereupon, at plaintiff's request, the time for performance was extended to April 16, 1929, upon payment by plaintiff of a cash bonus of $10,000 to S. T. McKnight Company.

"Performance was not made on or before the extended date. Thereupon, the McKnight Company caused to be served upon plaintiff what purported to be a notice of cancellation of contract and extension of agreement.

"In December of 1929, McKnight Company instituted proceedings in the District Court of Hennepin County for the registration of title to the land in question under the Minnesota Torrens Title Statute in cases numbered 3657 and 3675, the latter proceeding being in the name of Mary A. Baker, as fee owner, S. T. McKnight Company, being named lessee thereof. In its application made and filed in the title registration proceeding defendant McKnight Company represented the 'nature of the estate or interest' of plaintiffs as 'contract for the lease with option to purchase dated December 17, 1928, with S. T. McKnight Company, a corporation, extended to the 16th day of April, 1929, were duly canceled on account of defaults by said R. J. Nitkey, by notice served on the 20th day of April, 1929, on said R. J. Nitkey.' On June 21, 1930, final judgment was entered in the proceeding decreeing title to Lots Eighty-three (83) and Eighty-four (84) to be in defendant S. T. McKnight Company in fee simple, free from any liens, claims, or encumbrances, and to Lot Eighty-two (82) to be in Mary A. Baker, subject to lease to McKnight Company."

And that:

"Essentially the relief prayed for is:

"1. That the arrangement set forth in the complaint be declared and found to be an equitable mortgage with plaintiff, R. J. Nitkey, mortgagor, and defendant S. T. McKnight Company, mortgagee;

"2. That plaintiffs be decreed to be the rightful owners of the real estate in question and thereby entitled to the rents and profits until foreclosure, for which an accounting is demanded;

"3. That plaintiffs' obligation to pay money be decreed void and canceled by reason of the bonus payment of $10,000, thereby making the transaction usurious; and

"4. That plaintiff have and recover from S. T. McKnight Company with interest the sum of $35,000 paid by plaintiff and received by said company."

We note from our study of the plaintiff's bill in equity it also contained allegations as follows:

"Twenty-seventh:—That the said payment of Ten thousand and no/100 ($10,-000.00) by said plaintiff to said S. T. McKnight Company * *. * and received by said S. T. McKnight Company constituted usury under the laws of the State of Minnesota * * * and was null and void under the provisions of the law of said State."

"Thirty-eighth:—That the statement made in said application by the said S. T. McKnight Company, as aforesaid, stating 'which contract and extension thereof were duly cancelled on account of defaults by said R. J. Nitkey, by notice served on the 20th day of April, 1929, and the 24th day of April, 1929, on said R. J. Nitkey' was untrue. That said applicant did not reveal to said Registrar the then existing nonpayment of the mortgage registration tax, as provided by the Statutes of the State of Minnesota thereunto relating; that said applicant well knew or should have known and so stated in said application said fact and the Registrar of Torrens Titles of Hennepin County, Minnesota, and the examiners of his said office, well knew or should have known at the time of said application and before final decree was entered by the District Court of Hennepin County in said cause, that said·statements made by the said S. T. McKnight Company were false and operated as a fraud on these plaintiffs.

"Thirty-ninth:—That said S. T. McKnight Company did not state the true facts in said application, and did not state that the contract and agreement referred to in said application was in fact a deed, subject to a purchase money or equitable mortgage, and the said applicant, said S. T. McKnight Company and the Registrar of Titles of the County of Hennepin, well knew or should have known that said S. T. McKnight Company, applicant as aforesaid, was the mortgagee and that the plaintiff, R. J. Nitkey, was the mortgagor, at the time of said application, and that, under the Statutes of the State of Minnesota, thereunto relating, such application was void, except with the written consent of said plaintiff, R. J. Nitkey, as mortgagor, to said application, and that no consent, either written or verbal, was ever given by said plaintiffs or by either of them.

"Fortieth:—That in paragraph 4–A of the examiner's report of the land registration department of Hennepin County, Minnesota, reference is made to a lease with

option to purchase, but that no copies of the original purported real estate purchase contract or 99 year lease, or either of them, appear in the files, as is provided by the Torrens Title Statutes of the State of Minnesota, and these plaintiffs allege upon information and belief that said original purported real estate purchase agreement was never delivered, shown or given up to the Registrar of Titles of the County of Hennepin, or to any of his examiners, as required by the Statutes of the State of Minnesota thereunto relating.

"Forty-first:—That at the time of the making of said application by the said S. T. McKnight Company for a Torrens Title, as aforesaid, and at numerous times thereafter, the plaintiff, R. J. Nitkey, was a resident of the City of Minneapolis and had offices in said City of Minneapolis in the Security Building, a property adjoining the said McKnight Building, wherein the offices of the S. T. McKnight Company were located, and that the said S. T. McKnight Company, at all times knew of such residence, but that no effort was made by the said S. T. McKnight Company to make personal service upon said plaintiff while in the City of Minneapolis, nor was a true copy of said application ever served or any attempt made to serve either or both of these plaintiffs.

"Forty-second:—That said S. T. McKnight Company, with intent to conceal the real purpose of such fraudulent application for registration, as aforesaid, attempted to make a purported service by publication as otherwise provided by the State of Minnesota, and then and there authorized the mailing of copies of said publication to these plaintiffs, addressed to R. J. Nitkey and —— Nitkey, his wife, 538 South Dearborn Street, Chicago, Illinois."

"Forty-fourth:—That the plaintiff, R. J. Nitkey, does not admit or deny the service of said purported notice by publication, as shown by the affidavit of the Sheriff and Recorder of Hennepin County, but the plaintiff, Lillian F. Nitkey, wife of said plaintiff, R. J. Nitkey, does deny that she did at any time receive such purported notice or have any knowledge at any time of said application or of any statements therein made by the said S. T. McKnight Company.

"Forty-fifth:—That pursuant to the order of the District Court of Hennepin County, a first certificate of Torrens Title numbered 47899 and 3657 were granted to said S. T. McKnight Company by a certain decree entered on June 21, 1930, and that such decree was designed by said S. T. McKnight Company and constituted an attempt to deprive the plaintiff, Lillian F. Nitkey, of her dower interest in the real estate, without due process of law, and that the same is invalid and in violation of the Fourteenth Amendment of the Constitution of the United States."

The bill in equity also contained a prayer, as follows: "Sixty-first:—That the Registrar of Titles of Hennepin County, State of Minnesota, be ordered to decree void and surrender the first application and Torrens Title certificate granted June 21, 1930, numbered 47899 and 3657 by the District Court of Hennepin County to the S. T. McKnight Company, and that all said proceedings be declared to be null, void and of no effect."

The named defendants presented to the court below and reiterate in this court, among other things, that the plaintiffs' bill in equity disclosed on its face that the defendants S. T. McKnight Company and Mary A. Clark had obtained a valid decree against the plaintiffs in the proper state court of Minnesota in proceedings duly brought and prosecuted to final judgment under the Minnesota (Torrens) Registration of Title laws, chapter 65, Mason's Minn.St.1927 (section 8247 et seq., as amended). That said defendants had alleged in said proceedings that they were the owners of the property in controversy herein and that in compliance with the statute (section 8252) they had disclosed in their application for registration of their title that the S. T. McKnight Company had entered into a contract with R. J. Nitkey, concerning the property, of date December 17, 1928, and that S. T. McKnight Company had canceled the contract on account of defaults by R. J. Nitkey by notices served upon R. J. Nitkey and his wife on April 20, 1929, and April 24, 1929, but that, notwithstanding the cancellation, R. J. Nitkey and —— Nitkey, his wife, claimed some estate or interest in the land by reason of the contract; that notices of the proceedings were mailed to the plaintiffs and served upon them by publication; that on June 21, 1930, a final decree was entered in the proceedings by the state district court, in pursuance of which a certificate of Torrens title was duly granted to S. T. McKnight Company as owner of

two of the lots and to it, as lessee, and Mary A. Clark, as owner, of the other lot; and that the plaintiff R. J. Nitkey does not deny that he had notice and knowledge of the pendency of the proceedings and does not assert that he was prevented from presenting in those proceedings whatever claims to the land he may have had by lack of knowledge of the pendency thereof. The position of the defendants was and is that the plaintiffs were estopped from maintaining this suit by the judgment rendered against them in the Torrens title registration suit.

The appellants, R. J. Nitkey and wife, contend that the decree of the state court in the Torrens title registration suit was void as to them (1) because the applicants in that proceeding did not disclose to the court and its officers the true nature of the contract of December 17, 1928, but falsely and fraudulently described the contract as "a contract for lease with option to purchase"; (2) because they failed to "deliver, show or give up" the contract to the registrar of title or to any of his examiners; (3) because the notices of cancellation of the December 17th contract were void in that the contract was, in equity, a mortgage and no registration tax had been paid on it by the McKnight Company; and (4) that as to R. J. Nitkey, the decree was void because he had been, in fact, a resident of Minnesota "at the time of the making of said application for a Torrens title and at numerous times thereafter" and personal service of process was not made upon him in the Torrens title suit.

(1) We find no facts pleaded in the plaintiffs' bill in equity herein to justify the pleaders' conclusion that the McKnight Company and Mary A. Clark were guilty of any fraud in the Torrens registration suit. They represented to the court in that suit that the plaintiffs Nitkey claimed an "estate or interest" in the McKnight building property, but the McKnight Company and Mary A. Clark did not allege anything concerning the plaintiffs' claim of estate or interest in the land that was in any way calculated to or could have deceived or misled the plaintiffs to their prejudice.

The plaintiffs' claim was described in the Torrens suit as being based on the contract of December 17, 1928, and the bill in equity herein shows that was true. The contract was completely identified by its date, the property covered by it, and the parties to it. The reference to its nature was in general terms merely as a "contract for lease with option to purchase" and the facts alleged in the bill in equity do not falsify that general description. It is plain from the bill in equity that the contract did contemplate that R. J. Nitkey was to get a lease to the property. It is alleged in the bill that the form of such a lease was agreed upon. But it is not alleged in the bill that the McKnight Company ever executed any lease of the property to the plaintiff Nitkey. It was merely agreed in the contract of December 17, 1928, that the McKnight Company would do so. The contract, therefore, was properly referred to as a "contract for lease." As to the reference to an "option to purchase," the bill in equity alleges that R. J. Nitkey was required by the contract to make certain payments which it was calculated would provide a sinking fund of $500,000 by January 1, 1954, and it is alleged concerning the sinking fund that there was to be an "option to said plaintiff to apply said sinking fund on the * * * purchase money obligation." There is no other allegation in the bill in equity as to when or how the plaintiff agreed to pay the purchase price of the property above the sum of $400,000 which he was required to pay in April, 1929, and which it is admitted he did not pay. Having pleaded that the contract contained such an "option to apply $500,-000.00 on the purchase price of the property" it is not open to R. J. Nitkey to say that the McKnight Company perpetrated a fraud by referring to the contract as one "with option to purchase."

Neither the Nitkeys nor the state court could have been deceived or imposed upon by the mere general reference to the nature of the contract of December 17, 1928, made in the Torrens suit. The general reference was calculated and clearly intended to require the applicants in the Torrens title suit to produce the contract and the notices which they had fully identified and to make proof concerning the same on the hearing of the cause in order to sustain the claim of their application that they were the owners of the property notwithstanding the contract they had made concerning the same on December 17, 1928.

No acts or omissions amounting to fraud are alleged against the S. T. McKnight Company or Mary A. Clark in any steps they took in the Torrens title registration suit to identify the contract of De-

cember 17, 1928, and to relate the claims of the plaintiffs Nitkey to the contract and to require those plaintiffs to set up in the suit whatever estate or interest they claimed to have in the property in controversy under the contract of December 17, 1928.

■ (2) Nor does the allegation of the plaintiffs' bill in equity "on information and belief" that the McKnight Company did not exhibit the contract of December 17, 1928, to the court in the Torrens proceedings present anything but a collateral attack upon the Torrens decree. The allegation simply means that the applicants in the Torrens proceedings did not offer evidence to sustain the allegations of their application and so were not entitled to the decree they obtained. It suggests no acts of imposition or fraud extrinsic of the record either upon the parties or the court, but simply contradicts the judgment and presents an attempt to make a collateral attack upon the judgment.

■ (3) Likewise, the contention that the contract of December 17, 1928, was of such a nature that it ought to have been registered and tax paid as a mortgage under section 2322, Mason's Minn.St.1927, attempts a collateral attack only. Whether the Nitkeys could have defended the Torrens suit on such a ground is immaterial. They had their opportunity to assert it in the Torrens suit and, having failed to do so, they are precluded by the judgment therein.

It is well settled by the decisions of the Supreme Court of Minnesota that the title registration laws, which have been in force since 1901, are constitutional (State v. Westfall, 85 Minn. 437, 89 N.W. 175, 59 L.R.A. 297, 89 Am.St.Rep. 571; National Bond & Security Co. v. Hopkins, 96 Minn. 119, 122, 104 N.W. 678, 816; Peters v. City of Duluth, 119 Minn. 96, 137 N.W. 390, 41 L.R.A.(N.S.) 1044) and in a case where the court acquires jurisdiction the decree, in the absence of fraud extrinsic of the record, has the effect of an ordinary judgment. Dewey v. Kimball, 89 Minn. 454, 95 N.W. 317, 895, 96 N.W. 704; Hendricks v. Hess, 112 Minn. 252, 255, 256, 127 N.W. 995. "The decree cannot be attacked collaterally for error in the proceeding, and it cannot be collaterally attacked for want of jurisdiction, unless the want of jurisdiction appears affirmatively on the face of the record." Jones v. Wellcome, 141 Minn. 352, 170 N.W. 224, 226; Henry v. White,

123 Minn. 182, 143 N.W. 324, L.R.A. 1916D, 4; State ex rel. Coburn v. Ries, 123 Minn. 397, 143 N.W. 981, L.R.A. 1916D, 1; and the decree and registration constitute an indefeasible title against all the world. Riley v. Pearson, 120 Minn. 210, 139 N.W. 361, Annotated L.R.A. 1916D, 7; Reed v. Siddall, 94 Minn. 216, 102 N.W. 453; Doyle v. Wagner, 108 Minn. 443, 122 N.W. 316; Baart v. Martin, 99 Minn. 197, 108 N.W. 945, 116 Am.St. Rep. 394; In re Application of Juran, 178 Minn. 55, 58, 226 N.W. 201; Abrahamson v. Sundman, 174 Minn. 22, 24, 218 N.W. 246.

■ This suit was brought in equity in the federal court and the governing principles that fraud to justify equitable relief against the judgment must be extrinsic fraud, extrinsic to the issues, and such fraud must be shown to have been practiced upon the adverse party, preventing him from fully presenting his case, are fully stated for this court in Continental National Bank v. Holland Banking Co. (C. C.A.8) 66 F.(2d) 823.

■ The plaintiff Lillian F. Nitkey was admittedly a nonresident of Minnesota when the Torrens title registration suit was brought and as the bill in equity admits that she was served by mailing and publication in due form "as otherwise provided by the State of Minnesota" the service and the decree were binding upon her. Mason's Minn.St.1927, § 8262 (as amended by Laws 1929, c. 97, § 1); § 8268.

■ (4) As to the service upon R. J. Nitkey:

It appears from the bill in equity that there was a service upon R. J. Nitkey in the suit by publication duly verified "by the affidavit of the Sheriff and Recorder of Hennepin County," as contemplated by the Torrens law (sections 8262 and 8268) and "as otherwise provided by the state of Minnesota" and there was authorized mailing of copies of said publication to R. J. Nitkey and ―――― Nitkey, his wife, at 538 South Dearborn street, Chicago, Ill. The date of the service by publication and mailing is not mentioned in the petition and the petition is consistent with that service having been made at one of the times when R. J. Nitkey was not "a resident of Minneapolis." It is not alleged that the address in Chicago to which the copy of notice was mailed was not the domicile or "house of abode" of R. J. Nitkey and his family at

the time of the mailing, and particularly it is not alleged in the bill in equity that R. J. Nitkey did not know of the pendency of the Torrens proceeding. The applicable sections of the Minnesota title registration law limit the time to commence an action against a final decree in a suit brought under it to six months after the rendition thereof (sections 8272, 8274) and the general statute limits the right to defend against a suit where summons is not personally served to one year (section 9236). Here the bill in equity attacking the decree on account of the alleged defect in the service was not filed until more than four years after the decree was rendered on June 21, 1930.

In Reed v. Brun, 157 F. 190, 192, this court said: "If the complainant invokes the exercise of the judicial discretion of the court to permit the maintenance of his suit after the analogous statutory time has expired, the burden is upon him to show that he has been guilty of no laches. He must specifically plead and prove what the impediments were to the earlier prosecution of his claim, if he was ignorant of the facts alleged in the bill, how he came to be so long without knowledge of them, the means, if any, by which the defendant concealed them, how and when he first came to know them, and such other facts and circumstances as would appeal to the conscience of a chancellor."

R. J. Nitkey has presented no reason why he did not contest the Torrens case before the decree was rendered therein, nor why he did not attack the decree within the statutory time afterwards. It appears from the bill in equity that while he sat by, apparently acquiescing in the Torrens decree, the value of the property materially changed and the S. T. McKnight Company sold a part of the property to the North West Bell Telephone Company. There is a want of equity in the bill in equity in so far as it attacks the Torrens decree on account of the alleged defect in the service of process. Flannigan v. Chapman & Dewey Land Co. (C.C.A.) 144 F. 371; Cragin v. Lovell, 109 U.S. 194, 3 S.Ct. 132, 27 L.Ed. 903; Massachusetts Benefit Life Ass'n v. Lohmiller (C.C.A.) 74 F. 23; Knox County v. Harshman, 133 U.S. 152, 10 S.Ct. 257, 33 L.Ed. 586; Brown v. County of Buena Vista, 95 U.S. 157, 24 L. Ed. 422. And that R. J. Nitkey was guilty of laches appears on the face of his bill in equity. Denton v. Baker (C.C.A.) 93 F.

46; Brown v. Hagadorn, 119 Minn. 491, 138 N.W. 941; Murphy v. Borgen, 148 Minn. 375, 182 N.W. 449; Johnson v. Umsted (C.C.A.) 64 F.(2d) 316, 321. The laches being apparent, the motion to dismiss was the proper remedy. Reed v. Fairmont Creamery Co. (C.C.A.8) 37 F.(2d) 332.

The allegations of the bill in equity clearly showed that the Torrens title decree and registration estopped the plaintiffs from maintaining a suit in equity to obtain title to or possession of the McKnight Building property or any accounting with reference to the rents and profits thereof.

II. Turning to the prayer of the bill in equity that the plaintiff R. J. Nitkey have a decree against S. T. McKnight Company directing it to return to R. J. Nitkey the sum of $25,000 paid by plaintiff R. J. Nitkey to defendants Wentworth & Griffith, Inc., and Colyer G. Wentworth on December 17, 1928, and by them turned over "upon receipt of it" to the defendant S. T. McKnight Company. It is to be noted that there is no prayer for the recovery of this item from Wentworth & Griffith, Inc., or from Colyer G. Wentworth. Recovery is prayed against the McKnight Company alone. The gist of the bill in equity in regard to the $25,000 item is that the money was delivered by the plaintiff to the defendants Wentworth & Griffith, Inc., and Colyer G. Wentworth to hold the money, in trust merely, for the plaintiff R. J. Nitkey subject to said plaintiff's order, but that said defendants wrongfully converted and delivered the money to the use of the defendant McKnight Company, and that company owes it to R. J. Nitkey. It is not alleged that the McKnight Company received the money upon any trust for the plaintiff Nitkey expressed or implied and the allegations are explicit to negative the idea that R. J. Nitkey delivered or caused the money to be delivered to the McKnight Company on account of the alleged land purchase. The allegations of the bill in equity concerning the $25,000 item present a claim against the McKnight Company as to which a plain adequate remedy at law for conversion or for money had and received to plaintiff's use accrued to R. J. Nitkey against S. T. McKnight Company on December 17, 1928. Such suit, if brought at law, would have been barred by the Minnesota statute of limitations six years later

924

and prior to the commencement of this suit (section 9191, Mason's Minn.St.1927). If, for any reason, the suit to recover the $25,000 from the McKnight Company could be kept on the equity side of the court, the same limitation would apply and would preclude the suit from being successfully maintained. Thomas A. Early, as Rec'r, v. City of Helena, Ark., et al. (C.C.A.8) 87 F.(2d) 831; Johnson v. Umsted (C.C.A.) 64 F.(2d) 316, 321; Baker v. Cummings, 169 U.S. 189, 18 S.Ct. 367, 42 L.Ed. 711; St. Paul, S. & T. F. Ry. Co. v. Sage (C.C.A.8) 49 F. 315; Heard v. Houston Gulf Gas Co. (C.C.A.5) 78 F.(2d) 189; Hughes v. Reed (C.C.A.10) 46 F.(2d) 435; McNair v. Burt (C.C.A.5) 68 F.(2d) 814; Curtis v. Connly, 257 U.S. 260, 42 S.Ct. 100, 66 L.Ed. 222. The defense appears on the face of the bill in equity and may be taken advantage of by motion to dismiss. Mercantile National Bank v. Carpenter, 101 U.S. 567, 25 L.Ed. 815.

■ Ordinarily an equity suit is not to be dismissed because a cause of action at law is stated; a transfer to the law docket being the proper procedure. Equity Rules 22, 23 (28 U.S.C.A. following section 723). But in this case the plaintiff Nitkey insisted and continues to insist that the $25,000 "constituted a trust fund for R. J. Nitkey's sole benefit" and that "he is entitled to relief" in regard to it in equity, and he has stood upon his bill in equity and urges his claim here as one in equity. Therefore, the trial court's decree dismissing the suit was right as to this item. Investors' Guaranty Corp. v. Luikart (C.C.A.8) 5 F.(2d) 793; Heard v. Houston Gulf Gas Co. (C.C.A.5) 78 F.(2d) 189.

■ Another item sued for is the sum of $10,000, as to which it is alleged in the bill in equity that plaintiff R. J. Nitkey paid the amount to the McKnight Company "as a bonus" to induce the McKnight Company to extend the time for payment required of R. J. Nitkey by the contract of December 17, 1928. It is alleged that the payment of the money ($10,000) and the receipt of it by the McKnight Company "constituted usury under the laws of the state of Minnesota," "that the same was a usurious contract and was null and void under the law of said state." The prayer of the bill in equity is that the McKnight Company be "required to return to said plaintiff R. J. Nitkey the $10,000.00 bonus payment together with interest."

Section 7037, Mason's Minn.St.1927, confers a right of action for recovery of money paid by way of usury but limits the time within which the action may be brought to two years after the payment. The plaintiff R. J. Nitkey was, therefore, in no better situation as to this item of his suit. All remedy at law was barred by the statute of limitations. The claim that there was a right to recover the amount on the ground of usury presented no basis for a suit in equity, but, as the plaintiff insisted upon proceeding in equity and has stood and still stands upon his bill in equity, this court must find that the trial court's decree dismissing the suit was right as to this item.

As we have found no error in the decree of the trial court, the same should be and is in all respects affirmed.