**INTERNATIONAL RAILWAYS OF CENTRAL AMERICA, Plaintiff,**

**v.**

**UNITED FRUIT COMPANY, Defendant.**

**No. 65 Civ. 479.**

United States District Court
S. D. New York.

May 11, 1966.

Leventritt, Bush, Lewittes & Bender, New York City, for plaintiff (Aaron Lewittes, M. Victor Leventritt, and Sidney Bender, New York City, of counsel).

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for defendant (Ralph M. Carson, Porter R. Chandler, Robert F. Dobbin and James W. B. Benkard, New York City, of counsel).

RYAN, Chief Judge.

There are before us two motions for partial summary judgment.

Defendant moves for partial summary judgment on the grounds that plaintiff is barred from prosecuting the antitrust counts of the complaint because it is attempting to split a cause of action (a form of res judicata), and because the statute of limitations has run on this action.

Plaintiff bases his motion for partial summary judgment on the doctrine of collateral estoppel. Plaintiff contends that the parties have previously litigated the facts in the New York State Courts, and that the findings of the New York State Courts bind the same parties in a subsequent litigation and establish defendant's violations of the antitrust laws.

To understand the questions of law raised by these motions, it is necessary to be familiar with the past relations between the parties to this suit. Plaintiff, INTERNATIONAL RAILWAYS OF CENTRAL AMERICA, is a New Jersey corporation, hereafter referred to as IRCA; defendant, UNITED FRUIT COMPANY, is also a New Jersey corporation, hereafter referred to as UNITED. IRCA operates the principal railroad system in Guatemala; UNITED operates banana growing plantations in Guatemala and other countries and imports them into the United States and other countries. UNITED transports its bananas over IRCA's railroad lines to the Atlantic seaboard and thence by ship to the United States and Europe. For many years defendant has directly or indirectly owned a controlling stock interest in plaintiff. In 1949 a derivative stockholders' suit was filed in the New York State Courts by minority shareholders of IRCA against UNITED. That suit, Ripley, et al. v. International Railways of Central America and United Fruit Company, 8 A.D.2d 310, 188 N.Y.S.2d 62, 8 N.Y.2d 430, 209 N.Y.S.2d 289, 171 N.E. 2d 443, was based on the theory that UNITED, as the controlling stockholder of IRCA, had abused its fiduciary duty to IRCA by paying insufficient freight rates for the transportation of its bananas and imported materials. In 1956, after a New York Supreme Court decision for the plaintiff, IRCA joined with the stockholders as plaintiff in urging for higher damages on appeal. In 1961 after twelve years of litigation, judgment was entered, awarding an amount exceeding nine million dollars to plaintiff IRCA. That case basically involved all the contractual and other relations between IRCA and UNITED and was limited by the New York statute of limitations to the years 1943 through 1961. In deciding the *Ripley* case the Court considered not only the language of the agreements between IRCA and UNITED but also the entire relationship between the two companies and their role in the development of the Guatemalan economy. This thorough inquiry of all the business relations between the two parties was necessary in order to accurately assess the damages which UNITED had inflicted on IRCA. The Court in *Ripley* also made a comparison of the rail transportation rates paid to IRCA by independent shippers with those paid by UNITED. For example, the Referee found that "Obviously the static rate of $60.00 or even as increased after 12 years to $75., then to $85., or even to $90. for U. F. Co., as against the rates prevailing, even of $130. plus $36. wharfage for general or so-called independent shippers, was inscionable (sic), unprincipled and contrary to the public interest" (p. 175 of Referee report and decision).

In the present action before us, the amended complaint alleges six claims for relief. Both parties move for summary judgment on the first, second, fourth and sixth claims. Defendant also moves for summary judgment on so much of the third and fifth claims as relate to matters occurring before February 16, 1961 with the exception of so much of the

fifth claim as is based solely on an alleged breach of contract.

Plaintiff's claims are basically as follows:

*FIRST*: Beginning in or about 1928 and continuing up through December, 1961, UNITED and its agents "contracted, combined and conspired in unreasonable restraint of * * * the interstate and foreign commerce of the United States with respect to bananas shipped or to be shipped to the United States from Guatemala," and with respect thereto have combined and conspired to monopolize, all in violation of Sections 1 and 2 of the Sherman Act. UNITED has also "agreed, contracted, combined and conspired" while shipping bananas over IRCA to restrain free competition in interstate and foreign commerce and increase the market price of bananas in parts of the United States in violation of Section 73 of the Wilson Tariff Act. The first claim also alleges that UNITED, while in control of IRCA, used IRCA as an instrument for monopolizing and restraining competition in the importation of Guatemalan bananas to the United States. UNITED's actions resulted in the failure of IRCA to obtain business from independent shippers because they were generally excluded by UNITED from the banana trade. IRCA asserts that they suffered a loss of profits during the period 1928–1961 of $65,000,000., and a loss in the permanent market value of their business due to permanent impairment of ability to attract independent shipments after 1961 of $10,000,000.

*SECOND*: That because of the wrongdoings alleged in the first claim, UNITED shipped 195,500,000 stems of bananas over IRCA at low discriminatory rates, causing IRCA damage in excess of $45,000,000. In addition low discriminatory wharfage and shipping rates paid by UNITED for the transport of American and other imports into Guatemala caused IRCA damage in excess of $10,000,000.

*THIRD* (in relevant part): That Compania Agricola de Guatemala (a wholly owned subsidiary of UNITED) beginning in or about 1949 combined and conspired with UNITED in unreasonable restraint of trade for the purpose of monopolizing the foreign commerce of the United States, and in furtherance of this policy entered into agreements with IRCA "for a period of 20 years, expiring December 31, 1967. Pursuant to these agreements, CAG was required to ship all bananas grown by it in the Tiquisate area via IRCA to Puerto Barrios, on the Atlantic side of Guatemala and, pursuant to their terms as held by the New York courts in the * * * Ripley action * * * in good faith to maintain such shipments at least at the 1948 level, and IRCA was required to furnish said transportation. The freight rate was fixed by the contracts at $75. per carload, was later increased to $85. per carload, then to $90. per carload, but subject to a sliding scale based on the cost of fuel oil." (p. 25, Am.Compl.) The New York court found this rate scale inadequate and required UNITED as fiduciary of IRCA to pay increased rates. IRCA asks for further damages because UNITED was acting in violation of the antitrust laws.

*FOURTH*: During the period 1928–1961 UNITED monopolized the water transportation of Guatemalan coffee exports to the United States and in so doing used IRCA to transport the coffee to its vessels. As a result of UNITED's monopoly, IRCA was deprievd of substantial profits which they would have received had there been other common carriers by water with rates lower than those charged by UNITED for its ships. Plaintiff specifically alleges that "Under UNITED's control and domination IRCA published tariffs showing rail charges for coffee exports over the east coast route at a higher rate where the shipper did not ship on UNITED's steamers." (p. 31 amended complaint) Furthermore, UNITED's policy of equalization of shipping charges on goods shipped from the east and west coast of Guatemala deprived IRCA of its fair share of profits on such shipments. These damages to IRCA exceeded $15,000,000.

*FIFTH*: Plaintiff seeks damages for UNITED's breach of contract through Compania Agricola de Guatemala which was referred to in the third claim, limited to the six years prior to commencement of this action.

*SIXTH*: "In 1928 and again in 1936, UNITED directly or indirectly acquired stock of IRCA, where the effect of such acquisition or of the use of such stock, by the voting or granting of proxies or dominating IRCA, might be substantially to lessen competition or to tend to create a monopoly in the line of import and export commerce aforesaid" (p. 33 amended complaint). As a result of these illegal acquisitions, IRCA was damaged. The total damages sought by IRCA for all the wrongdoings alleged in the complaint are $169,000,000, which they assert should be tripled by the Court to $507,000,000. "less however, a credit to UNITED in the sum of principal paid for past damages on imports from and exports to the United States, pursuant to the judgment in the said State court action." (*Ripley*) (p. 34, amended complaint)

The *Ripley* case was extensively litigated. The appellate record was one of the longest ever submitted to the New York Court of Appeals. The printed report and decision of the Referee was 310 pages and according to the affidavit of one of the *Ripley* plaintiffs' attorneys, the trial consumed 176 trial days, pretrial depositions totalled 3,211 pages, discovery and inspection by the *Ripley* plaintiffs covered more than 500,000 pages of documents, the stenographic transcript covered 25,830 pages, and the parties introduced into evidence 5,900 exhibits totalling 250,000 pages in length. Briefs filed with the Referee comprised 1,588 printed pages. The *Ripley* plaintiffs proposed 1,190 findings of fact, and the defendant UNITED FRUIT 433 findings of fact. Briefs in the Appellate Division comprised 2,175 printed pages, and briefs in the Court of Appeals 710 printed pages.

A review of the *Ripley* record reveals that the New York court did not consider or rule upon the Federal antitrust violations alleged in the present action for the purpose of determining whether any such violations were present. Nevertheless, the facts on which a federal court might have made such a finding were before the Court. For example, in paragraph 18 of the *Ripley* supplemental Bill of Particulars dated August 14, 1953, plaintiff alleges that UNITED "recklessly utilized Railways as an instrument for reaping quick profits by requiring Railways to protect the monopoly position of United Fruit 'at all costs' as one Railways official put it. This not only denied Railways valuable revenue from independent banana shippers, but caused the company to lose revenue to competing truckers on the west coast." Plaintiff then alleges that this was part of a " \* \* \* program of discrimination waged by United Fruit against possible and actual competition for its sole benefit, \* \* \*." (p. I–85–6 Vol. I Record on Appeal).

Moreover, the Referee's Report, pp. 149–50, states:

"Most careful consideration of the issues presented, demonstrates decision can only be made upon accurate and comprehensive knowledge of the facts presented by the evidence in respect (a) of the suggested U. F. Co. overreaching, and imposition and taking of unjust low rates and discriminatory benefits through control and domination, and (b) the charge of stifling thereby of competition of business, present or reasonably prospective, of the defendant railroad which would otherwise be competitive." (Emphasis supplied)

Plaintiff, in fact, insists that the material facts were before the New York Court but he simultaneously attempts to make a distinction with which we cannot agree. It argues for the purpose of defeating the defendant's motion that the facts involved in the *Ripley* case are not substantially the same as those presented here; but, for the purpose of justifying summary judgment in its favor on basically the same claims, the attorney for

the plaintiff states in his moving affidavit: "8. The facts justifying the partial summary judgment herein prayed have been found as material facts in Ripley and deponent submits that defendant is collaterally estopped from challenging them * * *.". Such a distinction is logically and legally untenable.

We find that the facts presented to the New York court in the *Ripley* case were substantially the same as those presented by this litigation. Therefore, unless other considerations require a different result, IRCA is barred from prosecuting its pre-1961 antitrust claims against UNITED by the rule against splitting a cause of action.

The underlying rationale for the rule against splitting a cause of action is clearly stated by the late Judge Goodrich of the Third Circuit in Williamson v. Columbia Gas & Electric Corp., 186 F.2d 464, at p. 470:

> "To put it in rather elementary tort language, the basis of the plaintiff's recovery is liability-creating conduct on the part of the defendant, the invasion of a legally protected interest of the plaintiff and the necessary causal connection between defendant's acts and plaintiff's injury. The plaintiff having alleged operative facts which state a cause of action because he tells of defendant's misconduct and his own harm has had his day in court. He does not get another day after the first lawsuit is concluded by giving a different reason than he gave in the first for recovery of damages for the same invasion of his rights. The problem of his rights against the defendant based upon the alleged wrongful acts is fully before the court whether all the reasons for recovery were stated to the court or not."

Plaintiff urges that special circumstances exist which exempt this case from the strict application of the no splitting rule. First, it asserts that the New York court expressly refused to rule on any antitrust claim in the *Ripley* suit and that this fact, when considered in conjunction with the case of Lyons v. West-inghouse Electric Corp., 222 F.2d 184 (C.A.2, 1955) precludes the application of the *Ripley* action as a bar to its presently asserted antitrust claims. In Lyons v. Westinghouse Electric Corp., supra, Westinghouse sued Lyons in the New York Supreme Court for breach of contract. One of Lyons' defenses was that the contract in suit was illegal because it had been made in violation of the antitrust laws.

After the commencement of the state court action, Lyons filed a separate action in the Federal District Court (S.D.N.Y.), charging Westinghouse and others with violation of the antitrust laws. However, before Lyons had completed his discovery procedure in the federal court, a decision was rendered by the State Supreme Court in favor of Westinghouse. Westinghouse then sought and obtained from the federal court a stay of further federal court proceedings on the ground that " * * * there is reasonable likelihood that the conclusion of the State proceeding will make it unnecessary to try the action pending here." (16 F.R.D. 384, 385) Lyons sought a writ of mandamus to compel the District Judge to permit him to proceed with his suit. The Court of Appeals for the Second Circuit issued the writ of mandamus stating that "In the case at bar it appears to us that the grant to the district courts of exclusive jurisdiction over the action for treble damages should be taken to imply an immunity of their decisions from any prejudgment elsewhere; at least on occasions, like those at bar, where the putative estoppel includes the whole nexus of the facts that make up the wrong" (at p. 189).

IRCA contends that because the Court of Appeals in Lyons v. Westinghouse Electric Corp. held that the Federal Courts have exclusive jurisdiction over actions for treble damages under the antitrust laws and the New York court in *Ripley* concurred with this view of the law by refraining from ruling on antitrust questions in the *Ripley* suit, therefore, IRCA has never had its day in court on these questions. In our view, plain-

tiff's reasoning fails to take into account the important procedural distinction between the *Lyons* case and the case at bar. In Lyons v. Westinghouse Electric Corp. the antitrust violations were raised in the State court as an affirmative defense by a defendant who did not choose his forum. In the case at bar, the plaintiff with a choice of possible forums selected one which could give him only partial relief.

The United States Court of Appeals in *Lyons* had to weigh conflicting policies. If it held the no splitting rule to be of paramount importance a defendant in a State court suit would be faced with the unpleasant dilemma of either asserting his antitrust claim as a defense to the State court action and thereby possibly lose the opportunity of suing for treble damages, or refraining from asserting the claim as a defense, thereby possibly paying an unfair judgment and thereafter pressing a separate suit in the federal court for treble damages. If on the other hand the federal court found it to be more important that a victim of antitrust violations be given both the opportunity to defend himself in a State court action and the opportunity to litigate the antitrust issues as a plaintiff in the federal court, when they were required to hold that the no splitting rule should give way to a predominant consideration.

The United States Court of Appeals said 222 F.2d at p. 190: "It is appropriate to the underlying purpose of the Acts that such claims [those made by violators of the antitrust laws who bring actions in the state courts] shall not succeed, by compelling individuals on whom the wrong impinges to pay what is not due, even though they may later recover the amount three times over. For these reasons we think that the situation is one where the delay and expense of a double trial of the same issue, do not balance the importance of an uncommitted enforcement of the remedy provided in § 15."

The case at bar does not present that problem.

■ The plaintiff who fails to bring an action in a court capable of granting him complete relief has no further right to a second bite at the same apple because he later decides that he should have sued for antitrust violations. The applicable rule appears as comment j to § 62 of the Restatement of Judgments (1942). Section 62 contains the general rule against splitting a cause of action:

"j. *Where the jurisdiction of the court is limited.* The rule stated in this Section against splitting causes of action is applicable although the first action is brought in a court which has no jurisdiction to give a judgment for more than a designated amount. Where the plaintiff brings an action in such a court and recovers judgment for the maximum amount which the court can award, he is thereby precluded from thereafter maintaining an action for the balance of his claim. (See Illustration 16.) The rule is also applicable where the first action is brought in a court of limited jurisdiction which has no jurisdiction to give a judgment as to one part of the plaintiff's claim. Where the plaintiff brings an action in such a court to enforce a part of his claim and recovers judgment, he is thereby precluded from thereafter maintaining an action for the other part of his claim. (See Illustration 17.) The plaintiff, having voluntarily brought his action in a court which can give him only a limited remedy, cannot insist upon obtaining a further remedy in another action."

■ Plaintiff contends, however, that it would be inequitable to have required the minority stockholders to have brought suit for antitrust violations in the federal court when the law in this Circuit as it stood until March 9, 1953 when the decision in Fanchon & Marco, Inc. v. Paramount Pictures, 202 F.2d 731 (C.A.2) changed the law, forbade stockholder derivative actions to enforce the sanctions provided in the federal antitrust laws. Although this argument is appealing, it cannot be given much weight in this instance. There was noth-

ing which prevented the *Ripley* plaintiffs from bringing suit in the federal court just as the *Fanchon & Marco* plaintiffs had done. In fact, the plaintiffs in that case filed their action on March 30, 1949 (202 F.2d at 732) only one month after the commencement of the State court action in *Ripley*. Moreover, the decision in *Fanchon & Marco* preceded by six months the commencement of the trial in *Ripley* (September 14, 1953). Therefore making the fair assumption that the *Ripley* plaintiffs knew of the antitrust violations by this time, there was no barrier legal or otherwise which prevented them from presenting their entire claim to a court capable of granting complete relief.

The exhibits presented to the Court indicate that the *Ripley* plaintiffs had knowledge of the antitrust violations some time before 1953. At least some of the attorneys for the present plaintiff also represented the plaintiffs in *Ripley*. M. Victor Leventritt, Esq., is one of the attorneys who participated in the *Ripley* litigation for the plaintiffs and is one of the leading attorneys for the plaintiff in this suit. He has indicated that he and his associates had concluded at least by 1953 "that United Fruit had committed various violations of the antitrust laws in relation to the subject matter of the *Ripley* action" (p. 47 deposition of M. Victor Leventritt). Furthermore, he testified to having suggested to a member of the Antitrust Division of the Department of Justice that they "could very easily prove a case against the United Fruit Company" (p. 67 supra). Surrounding circumstances indicate that this suggestion was made some time in December of 1951.

Therefore, we find that the plaintiff is barred from asserting those claims for relief which he could have asserted had he brought the *Ripley* suit in the federal court. To be specific, the first, second, fourth and sixth claims are barred by the rule against splitting a cause of action.

Because this is a motion for partial summary judgment, we feel it is important to rule on the second major issue presented, that is: if the plaintiff was not barred by the rule against splitting a cause of action, would it nevertheless be barred from prosecuting portions of the complaint by the operation of the statute of limitations.

The original complaint in *Ripley* named thirty seven stockholder plaintiffs. At the end of the trial hearings in 1956, there were twenty-seven stockholder plaintiffs and intervenors owning a total of 11,700 shares of IRCA stock. All the plaintiffs and intervenors were represented by able counsel. The stockholders and their attorneys waged an all-encompassing and successful lawsuit on behalf of the corporation against the same defendant for over twelve years. It cannot be seriously contended for the purpose of tolling the statute of limitations that IRCA did not have knowledge of these alleged antitrust violations. Therefore, unless the statute of limitations is tolled because of the "control" exercised over IRCA by UNITED, the statute of limitations will bar any relief sought for damages prior to February 16, 1961, i. e., four years prior to the filing of this action (15 U.S.C.A. § 15b).

There can be no doubt that UNITED controlled IRCA at least through 1961. The New York Court of Appeals said in *Ripley* " * * * we are satisfied that the findings are sustained that United was in practical control of IRCA at least after the creation of the voting trust in 1928, and stood in a fiduciary relationship to IRCA as respects the latter's minority shareholders insofar as concerned business transactions between IRCA and United or its subsidiary (citing cases)" 8 N.Y.2d at p. 436, 209 N.Y.S.2d at p. 291, 171 N.E.2d at p. 444. Therefore, if "practical control" of the type found in *Ripley* is enough to toll the statute of limitations, we are compelled by the doctrine of collateral estoppel to decide this issue in plaintiff's favor.

Plaintiff relies mainly on the language of the Court of Appeals in the case of Moviecolor, Ltd. v. Eastman Kodak Co., 288 F.2d 80, 90 A.L.R.2d 252 (C.A.2, 1961). In that case, a treble damage action was brought to recover for dam-

240

ages which arose from an occurrence 30 years before. The plaintiff claimed that the statute of limitations must be tolled because the wrongful conduct had been fraudulently concealed by the defendant. The Court went on to hold that the plaintiff had not stated a claim which would entitle him to the tolling of the statute of limitations. After reaching its decision, the Court added the additional language which IRCA relies on here:

> "If the complaint adequately alleged that defendants had acquired management control of plaintiff in May, 1930, so that plaintiff thereafter was acting in defendants' interest rather than for all its stockholders, the case would come within another exception suspending the statute during the period of such adverse domination—an exception which, though sometimes bulked with concealment, in fact, rests on grounds akin to undue influence or duress. Allen v. Leflore County, 1900, 78 Miss. 671, 29 So. 161; Aldrich v. Steen, 1904, 71 Neb. 33, 98 N.W. 445, 100 N.W. 311; Alexander v. Thompson, 6 Cir., 1912, 195 F. 31. See Dawson, Undiscovered Fraud and Statutes of Limitation, 1933, 31 Mich.L.Rev. 591, 615–16; 63 Harv.L.Rev. at 1219; Annotation 1939, 121 A.L.R. 1294. However, the complaint falls far short of this; * * *." (288 F.2d p. 88).

The language relied on by the plaintiff was not essential to the holding of the case. It was merely a rough gloss on a hypothetical situation and even at that not intended to restate the entire law applicable to cases of adverse domination, as is clear from an examination of the authorities cited in Judge Friendly's opinion. A reading of these authorities leads one to the conclusion that this doctrine has been applied only when the plaintiff who was precluded from bringing an action by the defendant's undue influence or duress had been totally dominated by the defendant and for reasons of economic or physical fear had not brought suit within the required time.

Thus, in Allen v. Leflore County (supra), a wife was forced to execute a deed to land by threats from the District Attorney to imprison her husband. The Court said: "It seems to us palpably plain from this record that she did not consent, but refused, to execute the deed involving her lands, and that she never would have done so but for the threats, that if she did not, her husband would be put in the penitentiary, than which a more terrible duress could not be put on a wife; * * *" (29 So. at p. 161).

In Aldrich v. Steen, supra, the heirs of a senile testator were granted a tolling of the statute of limitations as it appeared that the testator had deeded all his property to his housekeeper without consideration. In Alexander v. Thompson, the Court held that in an action for false imprisonment the statute of limitations must be tolled during the period of actual incarceration.

63 HARVARD LAW REVIEW, at p. 1219, cited by the Court of Appeals, states that in cases where a party is prevented from bringing suit because of undue influence or duress on the part of the defendant the period of limitations commences to run after the termination of the undue influence. The authors say this is because the plaintiff, even with knowledge of the wrong, is not likely to sue immediately. This tolling provision is obviously not meant to apply to a corporate situation where a strong minority group of shareholders had the requisite knowledge and did in fact bring a long and successful suit against the defendant.

We hold, therefore, that if the plaintiff is entitled to a tolling of the statute of limitations it must be under an exception to the usual rule other than undue influence or duress.

■ Another possible exception which must be considered by us raises the question of whether the statute of limitations should be tolled because the defendant breached a fiduciary duty to the plaintiff. The law in this area is clear, however, that when the beneficiary of an implied fiduciary relationship has the requisite knowledge of the wrong com-

mitted and is reasonably able to bring suit for redress, the statute of limitations will not be tolled. Indeed, the landmark case in the field, Curtis v. Connly, 257 U.S. 260, 42 S.Ct. 100, 66 L.Ed. 222 (1921), has laid down the law in cases where domination of a corporation is less than complete. In that action, brought by a receiver of a national bank to recover from former directors of the bank for losses allegedly sustained because of improper loans and dividends, the defendants pleaded the Rhode Island statute of limitations as a bar to the claim. The statute, which was held to apply, provided for tolling in case of fraudulent concealment by the defendant. The Supreme Court held unanimously that the statute would not be tolled (257 U.S. at 263–264, 42 S.Ct. at 101):

> "Three new directors came upon the board before August 3, 1910. It is alleged unmistakably in the bill that all the directors were chargeable with notice and did in fact know that the dividends were paid out of assets and not earned and that the improper loans should be recalled. Even if otherwise the statute of limitations would not have run, which we do not imply, knowledge of the facts by the new directors was knowledge by the bank, and none the less that according to the bill they in their turn were unfaithful. It is not alleged that they conspired with the defendants whose case we are considering.

> "They came to the board as the eyes of the bank. Anyone of them having notice was bound to do what he could to avert or diminish the loss. Indeed the bill seeks to charge one of them for not having done his duty. Notice to an officer, in the line of his duty, was notice to the bank. *A single director like a single stockholder could proceed in the courts*. Joint Stock Dis-

count Co. v. Brown, L.R. 8 Eq. 381, 403." (Emphasis added)

In the present suit, there can be no dispute that at least one and probably three independent directors have served on the board of directors of IRCA since 1959. In fact, one of the independent directors was on a slate of directors proposed by and including several *Ripley* plaintiffs at the 1952 IRCA annual meeting of stockholders. This slate, which was defeated in 1952 after a bitterly contested proxy fight, had the overwhelming support of the stockholders other than UNITED. The bitterness of the meeting, the publicity of the proxy fight, the support given to the opposition slate of directors and the number of named plaintiffs in the *Ripley* suit are all factors which indicate that there was widespread knowledge among IRCA stockholders of UNITED's wrongdoings. We find that IRCA had the requisite knowledge to bring suit against UNITED for antitrust violations; that they had the ability to and did in fact sue UNITED; and that at the very least the statute of limitations should not be tolled beyond the election of independent directors in 1959.

We hold that any claim for antitrust violations occurring before February 16, 1961 is barred by the statute of limitations. We grant summary judgment for the defendant on the first, second, fourth and sixth claims and so much of the third and fifth claims as relate to matters occurring before February 16, 1961 with the exception of so much of the fifth claim as is based solely on an alleged breach of contract.

A judgment in accordance with the foregoing may be settled on 5 days' notice; the proposed judgment will provide for immediate entry under Rule 54 and contain certification by the Court for intermediate appeal under Rule 1292(b).