215 So.2d 275

**Marjorie Van Winkle KING et al.**

v.

**COOSA VALLEY MINERAL PRODUCTS COMPANY, Inc.**

**6 Div. 513.**

Supreme Court of Alabama.

Oct. 31, 1968.

Chas. W. McKay, Jr., of McKay & Livingston, · Sylacauga, and Fred Blanton, Birmingham, for appellants.

Smyer, White, Reid & Acker, Birmingham, for appellee.

HARWOOD, Justice.

This is an appeal from a final decree entered by the Hon. William C. Barber, a judge of the 10th Judicial Circuit, sitting in equity.

On 30 September 1966, the complainant Coosa Valley Mineral Products Company, Inc., a Corporation, (hereinafter referred to as Coosa), filed a verified bill for discovery and other relief against the respondents, Alabama Marble Company, a dissolved corporation, and named only as a necessary party, and against H. M. King, Sr., for whom Marjorie Van Winkle King, as executrix of H. M. King, Sr., was substituted; Marion O. Gardner, Charles O. Gardner, and Charlotte G. Kassube, as co-executors and trustees under the will of R. M. Gardner deceased; Aurelia Harrison Haynes, and Louise King Runge as executrix under the will of W. H. Runge, Sr.; and Marion O. Gardner, individually.

Insofar as pertinent to this review, the bill alleged that the Alabama Marble Company, an Alabama corporation (hereinafter called Alabama), was formally dissolved on the 27th of December 1963; the respondents constituted all of the stockholders and directors of Alabama at the time of such dissolution; that Coosa on 8 August 1963, filed a complaint on the law side of the Circuit Court of the 10th Judicial Circuit of Alabama against the named respondent Alabama, and recovered a judgment on 14 April 1966, in said suit in the amount of $60,000 with court costs of $37.00; that Alabama paid nothing on said judgment and that at or prior to the dissolution of Alabama on 27 December 1963, Alabama sold all of its assets to Georgia Marble Company for a consideration of shares of stock in Georgia; and that Alabama then distributed the Georgia shares so acquired to the stockholders of Alabama.

The bill further alleged that the respondent stockholders of Alabama, under the pro-

visions of Section 21(86), Title 10, Code of Alabama 1940, as amended, are "in fact trustees for the benefit of the creditors of Alabama Marble Company, including complainant, and that said respondents must account to complainants for the assets coming into their hands from respondent Alabama Marble Company, said assets being impressed with a trust and which said assets should be condemned to satisfy complainant's lawful judgment and the claims of any other creditors who choose to intervene. Further, complainant avers that in the event respondents have dissipated said assets, they are personally liable to complainant up to the value of the assets coming into their hands when the assets of Alabama Marble Company were distribured (sic) to the stockholders."

The bill also avers that the distribution by Alabama of Georgia shares rendered it insolvent and constituted an illegal dividend.

Coosa prayed that the court "declare a trust for the benefit of complainant and any creditors similarly situated and who may choose to intervene, on all assets ascertained to belong in equity to Alabama Marble Company and coming into the hands of the directors or stockholders of Alabama Marble Company; and will condemn the said assets to the satisfaction of complainant's judgment against Alabama Marble Company, plus court costs, plus interest from the date of judgment; and that in the event any of the respondents have violated the trust imposed upon assets received by them from Alabama Marble Company, that they be held personally and individually liable to complainant up to the amount of said distribution."

By amendment to the bill, Coosa detailed its efforts to collect its judgment against Alabama, setting forth that an execution was issued on 30 May 1966, and returned "no property found."

The amendment further averred that Coosa obtained an order requiring respondent Alabama and its trustees-in-dis-

solution to file a sworn statement of assets, and that thereafter on 20 July 1966, the respondent H. M. King, Sr., on behalf of Alabama, filed a sworn statement representing that "said corporation in dissolution has no assets of any kind."

Demurrers to the bill as amended being overruled, all respondents filed an answer denying the allegations of the bill and demanding strict proof thereof. In addition, the respondent Louise King Runge, administratrix, etc., further answered that Coosa had not filed a claim against the estate of W. H. Runge, Sr., within the time prescribed by Section 214, Title 61, Code of Alabama 1940, and that therefore the claim of Coosa against her in her representative capacity was barred by Section 211, Title 61, Code of Alabama 1940.

After hearing, the Chancellor made a finding of fact to the effect that Alabama by its directors during the year 1963 sold all of its assets to Georgia in exchange for capital stock of Georgia which had a then value in excess of two million dollars, which said Georgia stock was thereupon distributed to the stockholders of Alabama as a liquidating dividend and as a final distribution, after which Alabama was formally dissolved, leaving no assets whatsoever. The court also found that Georgia had not filed a claim against the estate of W. H. Runge, Sr.

We interpolate here that at the time of the culmination of negotiations between Alabama and Georgia on 25 February 1963, the officers of Alabama were President W. H. Runge, Sr., Vice President-General Manager H. M. King, Sr., and Secretary H. M. King, Jr., and the directors of Alabama were H. M. King, Sr., W. H. Runge, Sr., and Marion O. Gardner.

The shares of stock in Alabama were owned as follows: H. M. King. Sr., W. H. Runge, Sr., and Aurelia Harrison Haynes, 500 shares each; estate of R. M. Gardner, deceased, and Marion O. Gardner, 250 shares each.

On 11 March 1963, Georgia issued to Alabama 56,000 shares of Georgia stock. On 29 March 1963, and 19 April 1963, these 56,000 shares were reissued on the books of Georgia as follows: H. M. King, Sr., W. H. Runge, Sr., Aurelia Harrison Haynes, as executrix, etc., 14,000 shares each, Marion O. Gardner and Charles O. Gardner and Charlotte G. Kassube, as executors, etc., 7,000 shares each.

After certain adjustments, an additional 4,472 shares of Georgia were issued to Alabama on 20 May 1963, and in turn were distributed on 23 May 1963, in the proportions as above set out to the above named stockholders.

The court also found that all the material averments of the bill as amended not specifically covered in the findings of fact set forth, were found to be true and fully supported by the evidence.

The court adjudged and decreed substantially as follows: (1) Established a trust for the benefit of Coosa consisting of the shares of Georgia held and owned by the respondents separately and severally; (2) Recognized and perfected a lien on said shares of capital stock of Georgia in favor of Coosa; (3) Enjoined the respondents from selling, transferring, and conveying said shares of capital stock of Georgia until the judgment of Coosa is paid in full; (4) Provided for delivery of shares of capital stock to the Register, in the event of nonpayment of the said judgment within 30 days from the date of the decree; (5) Held all respondents separately and severally, except Louise King Runge, as executrix of the estate of W. H. Runge, Sr., deceased, personally liable for any deficiency if a sale of the shares of capital stock of Georgia delivered to the Register did not produce sufficient monies to satisfy the lien of Georgia on said stock; (6) Directed a copy of the decree to be sent by the Register to the stock transfer agent of Georgia; (7) Reserved jurisdiction; and (8) Taxed costs against the respondents.

Thereafter on application of the respondents to fix the amount of supersedeas bond, said bond was fixed in the sum of $70,000 and a good and sufficient bond in this amount was filed and approved and citation of appeal thereafter issued.

In the "Introduction" to the argument portion of their brief, counsel for appellants state they are "particularly concerned with facts which were not alleged and which were not proved," and further posed as the "pivotal" question in this case, the following:

"Can a tort claimant who gives no notice of its claim to a going, financially responsible corporation, its officers, directors or shareholders prior to the dissolution of that corporation *de facto* thereafter maintain, and prevail upon, a creditors' bill to impose a trust upon the assets of the dissolved corporation in the hands of the directors and/or shareholders which assets were distributed on such dissolution and prior to notice of the claim?"

Counsel for appellant argues that the record clearly shows that as of 31 December 1962, Alabama was financially sound. Thereafter, the transaction with Georgia was consummated on 11 March 1963, in which Alabama conveyed all its assets to Georgia, and in payment received shares of stock in Georgia which were distributed to shareholders of Alabama, thus bringing about a de facto dissolution of Alabama prior to the filing of the suit by Coosa against Alabama. Therefore, counsel argues, the directors and stockholders of Alabama could not be deemed to have notice of Coosa's claim.

Counsel for appellant then asserts that the distribution by Alabama of all of the Georgia shares acquired by it prior to suit by Coosa was a lawful dividend made by the directors without notice of any claim against Alabama, and that the action of the directors in distributing the Georgia shares was fully warranted.

The fallacy of this argument is that Alabama was not formally dissolved until

27 December 1963, more than four months after the filing of the suit by Coosa.

Section 21(55), Title 10, Code of Alabama 1940, as amended (Pocket Part), provides:

"The board of directors of a corporation may, from time to time, declare and the corporation may pay dividends on its outstanding shares in cash, property, or its own shares, except when the corporation is insolvent *or when the payment thereof would render the corporation insolvent* or when the declaration or payment thereof would be contrary to any restrictions contained in the certificate of incorporation, subject to the following provisions: * * *" (Provisions omitted as immaterial) (Emphasis ours) Section 21(86), Title 10, Code of Alabama 1940, as amended, provides:

"Corporations whose charters have expired, or which have been dissolved otherwise than by judicial decree, continue to exist as bodies corporate for a period of five years after such dissolution for the purpose of prosecuting or defending suits, settling their business and affairs, collecting and disposing of their properties and distributing their assets, but not for the purpose of continuing their business. The directors of such corporations shall be trustees thereof, with full power to settle their business and affairs, collect and pay their debts, sell and convey their properties, prosecute and defend suits, make distribution to stockholders or other persons entitled thereto and to do all things reasonable and necessary to bring about an orderly liquidation and settlement of the business and affairs of the corporation. Suits may be brought and property may be conveyed by such trustees or a majority of them in the name of the corporation. Said trustees shall be liable to account to creditors and stockholders for assets coming into their hands."

■ A dissolved corporation's directors are jointly and severally liable to the corporation's creditors and stockholders to the extent of the corporate property coming into the hands of the directors. Such directors must exercise the reasonable care and prudence as that ordinarily required of trustees, in the performance of their duties as statutory trustees, for the settlement of the affairs of the corporation. Cohen v. Pavlik, 235 Ala. 289, 178 So. 435; Pankey et al. v. Lippman et al., 187 Ala. 199, 65 So. 771.

■ The distribution by the directors of Alabama of all of the Georgia stock, being all of the assets of Alabama at the time, was an act which necessarily rendered Alabama insolvent. The distribution of the Georgia stock was therefore not warranted, nor was it a permissible dividend.

The Chancellor was correct in decreeing that the directors, or their representatives, were liable for the payment of Coosa's judgment.

Likewise, the Chancellor was correct in fixing a lien in favor of Coosa on the stock of Georgia in the hands of the stockholders, and further decreeing that in the unlikelihood that the shares of Georgia should be insufficient to satisfy Coosa's judgment, then the stockholders should be personally liable for any portion of the judgment which is not so recovered from the stock

In Adams et al. v. Perryman & Co., 202 Ala. 469, 80 So. 853, a bill was filed by a judgment creditor against the stockholders of a corporation to compel them to account for the assets of their corporation which had been divided in toto among the stockholders when the corporation ceased to do business, without making provision for complainant's pre-existing judgment debt, and to hold them liable therefor to the extent of complainant's judgment against the corporation.

One of the two questions therein considered was whether the trial court correctly rendered a personal judgment against the respondents for the amount of complainant's claim.

In affirming the decree of the lower court, this court wrote:

"This principle of the preference of creditors over stockholders is of course applicable to all corporations, whether solvent or insolvent, and is wholly independent of the general 'trust fund' theory, now established by statute (Code § 3509), with respect to insolvent corporations. O'Bear's Case, [O'Bear Jewelry Co. v. Valfer] 106 Ala. 205, 223, 17 South. 525, 28 L.R.A. 707, 54 Am.St.Rep. 31.

"The reason for it is well stated in Sanger v. Upton, 91 U.S. 56, 23 L.Ed. 220:

" 'The capital stock of an incorporated company is a fund set apart for the payment of its debts. It is a substitute for the personal liability which subsists in private co-partnerships. When debts are incurred, a contract arises with the creditors that it shall not be withdrawn or applied otherwise than upon their demands, until such demands are satisfied. The creditors have a lien upon it in equity. If diverted they may follow it as far as it can be traced, and subject it to the payment of their claims, except as against holders who have taken it bona fide for a valuable consideration and without notice.

" 'In the absence of special statutory provisions this trust fund can in general be reached only by appropriate proceedings in equity.' Spear v. Grant, 16 Mass. 9; 10 Cyc. 655, 4.

" 'Accordingly, when the property has been divided among the shareholders, a judgment creditor, after the return of an execution against the corporation unsatisfied (as was done in the instant case), may maintain a creditor's bill against a single shareholder, or against as many shareholders as he can find within the jurisdiction, to charge him or them to the extent of the assets thus diverted; and it is immaterial whether he got them by fair agreement with his associates or by an act wrongful as against them.' 10 Cyc 655(II).

"In Bank, etc., v. St. John, 25 Ala. 566, 612, it is said that in cases like this—

" 'the stockholders, directors, and agents of the bank (corporation) are trustees for their (creditors') benefit, and as such may be made to discover and account in chancery.' "

In Kelly v. Andalusia Brick Co., 222 Ala. 203, 131 So. 559, the doctrine enunciated in Adams v. Perryman, supra, was reaffirmed. See also to the same effect Carns v. Filler, 218 Ala. 100, 117 So. 672.

■ Counsel for appellant argues that there is no evidence in the record from which it can be deduced that Alabama or its directors (and necessarily its stockholders) had any notice of Coosa's claim prior to 22 May 1963, the date of the final distribution of Georgia stock to the Alabama stockholders.

This argument is, we think, answered in the following statement in Kelly v. Andalusia Brick Co., supra:

"The right of creditors of a corporation to subject in equity its assets to its debts, after dissolution, in preference to the claims of stockholders, is now not questioned. The principle is stated in various forms of expression, but lead to the same result. If property of the dissolved corporation has come into possession of stockholders with corporate debts remaining unpaid, they become quasi trustees of such property, and subject to the equitable right of such creditors to subject it to their debts. This right exists so long as the property may be traced into possession of one who is not a bona fide purchaser. Adams v. Perryman, 202 Ala. 469, 80 So. 853; 2 Perry on Trusts (7th Ed.) § 242; 3 Story's Equity (14th Ed.) § 1660; 14 C. J. 970; 39 Cyc. 556; O'Bear Jewelry Co. v. Volfer, 106 Ala. 205, 17 So. 525, 28 L.R.A. 707, 54 Am.St.Rep. 31."

In the Coosa suit the Alabama stockholders were represented by the corporation, so far as to render binding on them the judgment in respect to corporate matters, and their interests in the corporation. For these purposes the stockholders were not necessary parties, and being represented by the corporation, the judgment in the respects above stated, is binding on them. Semple v. Glenn, 91 Ala. 245, 6 So. 46, 9 So. 265.

■ Where a dividend is paid out of capital stock, the stockholders are conclusively presumed to have known it, and are liable in an action for a repayment. They cannot claim to hold the position of bona fide holders. Ft. Payne Bank v. Alabama Sanitarium, et al., 103 Ala. 358, 15 So. 618.

· Where, under such circumstances, the stockholders dispose of the property of a corporation, they would be personally liable to the extent of the loss. Kelly v. Andalusia Brick Co., supra.

Counsel for appellant contends that the terms "debts" and "creditors" as used in Section 21(86), Title 10, as amended, of our Code, connote contractual obligations and not tort claims. This section has been set out, supra.

No ground of demurrer filed to the bill went to the nature of Coosa's claim as being in tort rather than in contract, nor was this matter asserted in respondent's answers to the bill. As stated in Gamble et al. v. Aultman & Co., 125 Ala. 372, 28 So. 30:

"* * * The answer must put in issue all the facts on which the defendant relies in bar of the relief sought by the bill, and evidence cannot be adduced of facts outside of these issues; otherwise the answer does not apprise the complainant of the line of defense which will be resorted to, nor afford him that opportunity for preparation to meet it which is the leading purpose of all pleading, and which the complainant is always entitled to with respect to a matter of defense affirmative in character and relied on to defeat and overturn a *prima facie* case made by the bill. Wood v. Pebbles, [121 Ala. 100, 25 So. 723] supra; Freeman v. Stuart, [119 Ala. 158, 24 So. 31] supra; Robinson v. Moseley, 93 Ala. 70, 9 So. 372; Moog v. Barrow, 101 Ala. 209, 13 So. 665.

"The answers of the respondents in this case being wholly insufficient in averring affirmative matter of defense, the burden of which was upon the respondents to aver and prove, and being fatal to the rights of the complainants, there was no error committed by the chancellor in granting the relief sought by the complainants' bill."

To like effect see Umphrey v. Barfield, 238 Ala. 11, 189 So. 64.

■ But if it be conceded that Coosa's claim was in tort rather than contract, we do not think it would avail the appellants under the facts of the present case, for as set forth in Roe et al. v. Durham, 195 Ala. 584, 71 So. 109:

"The respondent corporation is therefore still subject to a suit upon any liability which accrued prior to its dissolution in December, 1914. And it can make no difference whether the liability sued on grows out of a contract or a tort. It may be that the power given to the directors, by section 3516, to pay the corporate 'debts,' would not authorize them to pay claims in tort—a point which we do not decide. But, if that proposition be conceded, it would be a compelling reason why a suit should lie against the corporation to convert the claim into a judgment debt, so that it could be paid by the directors."

Section 3516 above referred to appears in the Code of 1907, and is in all material respects identical to Section 21(86), Title 10 (Pocket Part), of our present Code.

■ Counsel for appellant argues that the Chancellor erred in decreeing that the

estate of W. H. Runge, Sr., (represented by Louise King Runge, executrix) was liable to the extent of the Georgia stock held by it and imposing a lien thereon.

Louise King Runge, as executrix, had affirmatively plead that because Coosa did not file a claim against the estate of W. H. Runge, Sr., within six months after the issuance of letters testamentary to her, Coosa's claim was barred under our statutes of non claim and the Chancellor erred in subjecting the Georgia stock in her hands as executrix to a lien or trust.

As before stated, W. H. Runge, Sr., was both a director and stockholder of Alabama at the time of the distribution of the Georgia stock by Alabama. As such distributee he held the Georgia stock as trustee for the benefit of the creditors of Alabama.

In his decree the Chancellor did not impose a contingent personal liability against the executrix, probably because of the non claims statutes.

The rule in this state is that the requirement of presentation of claims against an estate is inapplicable to the claim of a cestui que trust for whom the decedent was trustee so long as the trust fund or property can be traced and the trust enforced by appropriate proceedings. This for the reason that the cestui que trust is seeking his own property only, and is not seeking to enforce a claim against the estate and property of the decedent. Esslinger v. Spragins et al., 236 Ala. 508, 183 So. 401, and numerous authorities cited therein.

Counsel for appellant also attacks that portion of the decree directing that a copy of the decree be sent by the Register to the stock transfer agent of Georgia in the State of Georgia.

Conceding that the decree could have no binding extraterritorial effect, the efficacy to be accorded the decree, if any, by the stock transfer agent is a matter within the province of the transfer agent. We know of no reason why the Chancellor could not provide that copies of the decree be sent to anyone the Chancellor thought appropriate to receive the same.

Furthermore, in view of the good and sufficient supersedeas bond safeguarding the provisions of the material portions of the decree, the action of the Chancellor in the premises would seem now of no importance in any event.

It is our conclusion that the decree appealed from is due to be affirmed, and it is so ordered.

Affirmed.

LAWSON, SIMPSON and MERRILL, JJ., concur.