**FEDERAL DEPOSIT INSURANCE CORPORATION, In its Corporate Capacity, Plaintiff,**

v.

**Esteban D. BIRD, et al., Defendants.**

**Civ. No. 79–800.**

United States District Court, D. Puerto Rico.

June 16, 1981.

---

Feldstein, Gelpí, Hernández & Castillo, San Juan, P. R., for plaintiff.

Harry R. Nadal Arcelay, Ramon L. Walker Merino, Jesus R. Rabell Mendez, Cancio, Nadal & Rivera, San Juan, Puerto Rico, for movants.

César T. Andreu Megwinoff, San Juan, P. R., José Guillermo Vivas, Ponce, P. R., Pablo R. Cancio, Cancio & Cancio, Aguadilla, P. R., Charles A. Cordero, Old San Juan, P. R., José A. Sánchez Alvarez, Hato Rey, P. R., Donato Rivera de Jesús, Ramírez & Rivera, Hato Rey, P. R., Antonio Zapater Cajigas, Ponce, P. R., Carlos G. Látimer, Santurce, P. R., José A. Axtmayer, San Juan, P. R., Guillermo Nigaglioni, Nigaglioni, Palou & Ledesma, Hato Rey, P. R., Salvador Antonetti, Goldman, Antonetti & Davila, Santurce, P. R., for defendants.

## OPINION AND ORDER

PEREZ–GIMINEZ, District Judge.

This is an action brought by the Federal Deposit Insurance Corporation (FDIC), in its corporate capacity, to enforce rights of action against former directors and officers of Banco Crédito y Ahorro Ponceño (Banco Crédito), and their insurors, which FDIC acquired from the Receiver of Banco Crédito. The Secretary of the Treasury of the Commonwealth of Puerto Rico, upon determining that Banco Crédito was in unsound financial condition and insolvent, ordered the bank closed and appointed FDIC as Receiver on March 31, 1978. Subsequently, FDIC, in its corporate capacity, and pursuant to 12 U.S.C. § 1823(e), purchased from the Receiver certain assets of Banco Crédito, including "any claim or claims against (Banco Crédito's) directors, officers of employees.".

This action seeks recovery for losses sustained by Banco Crédito as a result of alleged improprieties on the part of defendants. Plaintiff's theories of recovery, which rely upon the same underlying allegations of impropriety, are based on (1) alleged breaches of defendants' statutory and fiduciary duty owed Banco Crédito arising from an implied contract on the part of the defendants to discharge faithfully their duties as directors, and (2) negligence, i. e., failure to exercise care and diligence commensurate with the risk of harm and loss which their acts and omissions could cause.

Certain of the defendants[1] have filed a Motion to Dismiss on the ground that the action is barred by the applicable statute of limitations. In their Motion to Dismiss, defendants first urge that plaintiff's claims sound in tort and that any action brought against them must be filed within the prescribed period imposed by the applicable statute of limitations for such actions which would be one year under Puerto Rican law. The defendants next urge that the applicable limitations commenced to run at the time when the particular improprieties were committed by particular defendants. Consequently, defendants argue, plaintiff would have to allege and prove that each alleged improper act or omission occurred within the one year preceding the date of the filing of plaintiff's original complaint on March 30, 1979.

At the outset it must be understood that the questions presented in this action, like most others in actions in which the FDIC, in its corporate capacity, is a party, are governed by federal and not state law. The FDIC was created by an Act of Congress. 12 U.S.C. § 1811, *et seq.* All suits of a civil nature to which FDIC is a party are "deemed to arise under the laws of the United States". 12 U.S.C. § 1819. The Supreme Court "has consistently held that federal law governs questions involving the rights of the United States arising under nationwide federal programs". *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979). Where the authority of federal agencies to effectuate transactions derives "from specific acts of Congress passed in the exercise of a 'constitutional function or power,' (citation omitted) their rights, as well, should derive from a federal source". *Id.; Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943).

Determining that federal law controls in a particular case often gives rise to a second, "more difficult task ... of giving content to this federal rule". *Kimbell Foods, supra,* 99 S.Ct. at 1458. In *Clearfield Trust, supra,* the Supreme Court said:

"In absence of an applicable Act of Congress it is for the federal courts to fashion the governing rule of law according to their own standards.... In our choice of the applicable federal rule we have occasionally selected state law...."

318 U.S., at 367, 63 S.Ct., at 575. To hold that federal common law shall control does not inevitably require the creation of a nationwide federal rule. In certain circumstances, depending upon the nature "of the specific governmental interests and to the effects upon them of applying state law", it would be entirely appropriate to adopt and apply relevant state law as part of the federal common law. *Kimbell Foods, supra,* 99 S.Ct., at 1458, *quoting United States v. Standard Oil Co.,* 332 U.S. 301, 310, 67 S.Ct. 1604, 1609, 91 L.Ed.2d 2067 (1947). A primary consideration in each circumstance would be the existence *vel non* of an applicable federal statute. This Circuit has held, for example, that in cases arising under the Civil Rights Act, 42 U.S.C. § 1983, *et seq.,* adoption of state law comports with the general federal policy of recognition and use of state statutes of limitations when the federal statute contains none. *Burns v. Sullivan,* 619 F.2d 99 (1 Cir., 1980); *Ramírez de Arellano v. Alvarez de Choudens,* 575 F.2d 315 (1 Cir., 1978).

With specific respect to the FDIC, when, as in the instant case, it exercises authority granted it under 12 U.S.C. § 1823 and purchases assets from the receiver of a closed insured bank, its rights shall be determined by reference to federal law. *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); *FDIC v. Meo,* 505 F.2d 790, 793 n.4 (9 Cir., 1974); *FDIC v. Rectenwall,* 97 F.Supp. 273 (N.D. Ind., 1951); *Gunter v. Hutcheson,* 492 F.Supp. 546 (N.D.Ga., 1980). When acting in its corporate capacity, it is a federal agency. *FDIC v. Glickman,* 450 F.2d 416 (9 Cir., 1971); *James v. FDIC,* 231 F.Supp. 475 (W.D.La., 1964); *Freeling v. FDIC,* 221 F.Supp. 955 (W.D.Okla., 1962), affirmed 326 F.2d 971 (10 Cir., 1963).

---

1. The movants are identified in the motion and will be referred to here as "defendants".

■ In the instant case, however, the task of giving content to the federal law to be applied with respect to the applicable limitations statute is not difficult. In 1966 Congress enacted Pub.L. 89–505, codified at 28 U.S.C. § 2415, which established, to the exclusion of the application of any state law, "a federal statute of limitations with respect to every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied...", 28 U.S.C. § 2415(a) and "every action... founded upon a tort...", 28 U.S.C. § 2415(b). The intention of Congress to include federally created corporations such as plaintiff is clear from the legislative history of this statute. S.Rep.No.1328, 89th Cong., 2d Sess., reprinted in (1966) U.S.Code Cong. & Ad.News 2502, 2508. Furthermore, it has been held that the federal statute of limitations is applicable where the agency has acquired its claim by assignment. *United States v. Sellers*, 487 F.2d 1268 (5 Cir., 1973); *Weissenger v. United States*, 423 F.2d 782 (5 Cir., 1968); vacated on other grounds, 423 F.2d 795 (5 Cir., 1968); *United States v. Dold*, 462 F.Supp. 801 (S.D.S.Dak., 1978); *United States v. Winter*, 319 F.Supp. 520 (E.D.La., 1970).[2] The existence of a clear Congressional intent to establish for the United States and its agencies statutes of limitations with respect to contract and tort claims dictates the result that the provisions of 28 U.S.C. § 2415 be applied to this action.

The issue that remains to be determined is that of when FDIC's cause of action accrued. For reasons discussed more fully below, however, this Court does not find it necessary to determine the exact time of accrual in ruling on the instant motion to dismiss. Similarly, it is not necessary to rule on the issue of whether FDIC's claims sound in contract or in tort. Nevertheless, some discussion of these issues is appropriate at this juncture.

Irrespective of whether FDIC's claims are determined to sound in contract or tort, the relevant federal statute of limitations would commence to run from precisely the same time, i. e., "after the right of action accrues". 28 U.S.C. § 2415. Consequently, FDIC would have had six years from the date of accrual to file this action if it sounds in contract (28 U.S.C. § 2415(a)) and three years to file if it sounds in tort (28 U.S.C. § 2415(b)). In either case the threshold question as to the date the right accrued is critical.

■ Before proceeding with an analysis of the arguments of the parties regarding the accrual issue, the Court notes that the mere fact of the acquisition of the claims asserted in this action by the FDIC would not revive any claim which was already time barred by a Puerto Rican statute of limitations. In other words, if any of the claims which FDIC acquired on March 31, 1978, and asserts herein were barred by a relevant Puerto Rican limitations statute at that time, such claims remain barred. *Guaranty Trust Co. v. United States*, 304 U.S. 126, 141–142, 58 S.Ct. 785, 793, 82 L.Ed. 1224 (1938); *United States v. Pall Corporation*, 367 F.Supp. 976, 979 (E.D. N.Y., 1973); *United States v. Blackmon*, 496 F.Supp. 1250, 1251 (E.D.Ark., 1980). It is not necessary to determine at this time whether a federal agency may avail itself of the unexpired portion of a state limitations period if this be longer than the federal limitations period.

Defendants urge that a cause of action against bank directors for violations of common law and statutory duties accrues when the wrongful acts complained of are committed. In other words, defendants would

---

**2.** Although the acquisition by the FDIC, pursuant to 12 U.S.C. § 1823(e), is a *sui generis* transfer fashioned pursuant to a federal statute, this Court will apply the same doctrine in the present circumstances as that which would govern an ordinary assignment. It is not imperative at this time to decide whether all the consequences following upon such a transfer are the same as those following an assignment. It has been said that "(o)nce the FDIC, acting in its corporate capacity, purchases the assets of the closed bank, it is simply not a successor in interest to the closed bank. Section 1823(e) provides it with more protection than the bank or its receiver". *FDIC v. Vogel*, 437 F.Supp. 660, (E.D.Wisc., 1967).

argue that whatever limitations are applicable said period began to run at the time each loan or other transaction of which FDIC complains occurred, i. e., at the time the money left the bank. In support of their position defendants rely heavily upon two cases decided some sixty years ago, *Corsicana National Bank v. Johnson*, 251 U.S. 68, 40 S.Ct. 82, 64 L.Ed. 141 (1919); and *Curtis v. Connly*, 257 U.S. 260, 42 S.Ct. 100, 66 L.Ed. 222 (1921), in which the Supreme Court was forced, *inter alia*, to interpret the application of certain provisions of the laws of Texas and Rhode Island, respectively, in connection with claims against bank directors. The holding of the Supreme Court in the two foregoing cases does no more than restate the rather general rule. that, even though the ultimate amount of damage sustained may not be ascertainable until a later date, the damage as well as the injury is complete when the negligent act occurs. This Court does not find that these cases represent compelling authority for defendants' proposition that, as a matter of law and irrespective of other possible facts and circumstances, limitations commence to run against the directors and officers of a bank immediately upon the commission of an impropriety.

■ The decisions of other courts considering this issue establish clearly that the question of postponement of the accrual of causes of action similar to the instant action depends largely on the facts and circumstances attendant to each particular situation. Plaintiff points to several decisions which support the proposition that statutes of limitations will not accrue while the culpable directors are still in control or dominate the bank. *Adams v. Clarke*, 22 F.2d 957, 959 (9 Cir., 1927); *Schilling v. Parman*, 35 F.2d 780 (D.Or., 1928); *Michelsen v. Penney*, 135 F.2d 409 (2 Cir., 1943). It is the opinion of this Court that, while there does exist a divergence of judicial views on this point, the better reasoned rule is that advanced by plaintiff in this action, namely, that a cause of action does not accrue while the culpable directors remain in control of the bank. The foregoing cases and others rely on various theories, e. g., that control *per se* precludes the possibility of filing suit, that control puts the corporation in the position of a *cestui* of a trust and unable to make an adverse claim, or that control relates to a concealment or nondisclosure, fraudulent or otherwise, of the existence of grounds for a cause of action. Whatever the express rationale offered, these decisions reflect an implicit appreciation of the realities of the shareholders' position, that, without knowledge of wrongful activities committed by directors, shareholders have no meaningful opportunity to bring suit.

■ In its complaint, FDIC alleges that the various defendant directors and officers had served anywhere from three to fifty-four years in their positions as directors or officers of Banco Crédito. The domination of Banco Crédito's board of directors and management appears to have been protracted and continuous in nature. Assuming *arguendo* that defendants committed the alleged improprieties, in no meaningful sense can it be said that the claims could have been sued upon prior to the bank's failure and the appointment of the receiver. Is it logical to assume that the directors, in whom the bank has entrusted the discretion to sue, would authorize the initiation of an action against themselves for their own improprieties? To permit bank directors who control and dominate the affairs of a bank to benefit from their own inaction by finding that, as a matter of law, limitations run from the moment of their commission of improprieties, is a result which justice could not tolerate.

While it is not necessary to base its ruling on this motion to dismiss on such considerations, the Court does wish to observe that the available legal precedent, most of which dates from the first two decades of this century, is of questionable value at this time in our history. One need only recall the financial and economic disaster which befell the nation in 1929 and which led to various nationwide programs, including cre-

ation of the FDIC,[3] to realize that earlier doctrines are suspect and subject to reexamination. Reference to more recent precedents is enlightening. In 1933 a new philosophy of corporate relationships and responsibilities was expressed through the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa and its companion laws, such as the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78hh. The emphasis has shifted from a right of shareholders to inspect corporate records and affairs to a duty of corporate managers to disclose. The new philosophy has been the subject of much scholarly analysis. Eisenberg, The Legal Roles of Shareholders and Management in Modern Corporate Decision Making, 57 Calif.L.Rev. 1 (1969); Hetherington, Fact and Legal Theory: Shareholders, Managers and Corporate Social Responsibility, 21 Stan.L.Rev. 248 (1969). The emerging federal law of corporations, exemplified by cases such as *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833 (2 Cir., 1968), *certiorari* denied 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), has begun to affect state law as well. *Diamond v. Oreamuno*, 24 N.Y.2d 494, 301 N.Y.S.2d 78, 248 N.E.2d 910 (1969). The precedents of another era do not necessarily govern today.

The defendants also argue "that the action the FDIC is exercising now could have been originally brought by the bank, its shareholders, or any other person aggrieved, including FDIC". It is further asserted on behalf of the defendants "that all the information pertaining to the bank's transactions and loans is revealed in the bank's books". Attention is called to reports which insured banks are statutorily required to file and examinations conducted by the Secretary of Treasury of Puerto Rico and the FDIC, and the conclusion drawn "that the particular acts imputed . . . were all discoverable long before the filing of this suit".

This line of argument is unavailing both factually, and legally. On this motion to dismiss there is no evidence before the Court from which the proposed factual determinations can be made. Whether the books, reports and examinations disclosed the facts upon which liability is predicated cannot be determined from the complaint. The argument is legally unsound insofar as it imputes to the directors and shareholders the knowledge which may have been acquired by the Secretary of Treasury and the FDIC from reports and examinations. While the FDIC is empowered "(t)o make examinations of and require information and reports from banks", 12 U.S.C. § 1819 (Eighth), the duty to discover wrongdoing under the insurance scheme has been construed to be "upon bank directors and they may not transfer it to the FDIC by the easy expedient of purchasing insurance". *First State Bank of Hudson County v. U. S.*, 599 F.2d 558, 563–4 (3 Cir., 1979), *certiorari* denied 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980). Aside from the fact that those in control were unlikely to initiate any action contrary to their own interests, defendants cite no authority to support their proposition. On the contrary, it does not appear "that bank examinations under the Act were intended to ring the alarm bell to arouse drowsy directors and misguided stockholders". *Id.* at 563.

The defendants have failed to establish that plaintiff can prove no set of facts in support of its claim which would entitle it to relief. Accordingly, the motion to dismiss, is hereby DENIED.

IT IS SO ORDERED.

---

3. The Federal Deposit Insurance Corporation was originally created as a part of the Federal Reserve Act by Act June 16, 1933, c.89, section 8, 48 Stat. 168, 12 U.S.C. § 1811, Codification note.