**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff,**

v.

**H.D. BUTTRAM, Sr., et al., Defendants.**

**Civ. A. No. CV83–PT–2637–M.**

United States District Court, N.D. Alabama, M.D.

July 23, 1984.

---

L. Burton Barnes, III, Lewis W. Page, Jr., Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for plaintiff.

Curtis Wright, Dortch, Wright & Russell, Gadsden, Ala., for defendants.

## MEMORANDUM OPINION

PROPST, District Judge.

This cause comes to be heard on plaintiff's April 13, 1984 motion, which seeks summary judgment with respect to the second, third, fourth, fifth, sixth and special defenses raised by defendants in their answer. Plaintiff, "Federal Deposit Insurance Corporation, in its corporate capacity," brings this action against the directors of the Cedar Bluff Bank for breach of fiduciary duty and negligence. The defenses in question allege that this court does not have jurisdiction over this action, that the action is barred by the applicable statute of limitations, that the claims made the basis of this action were not properly assignable to plaintiff, and that plaintiff's claim against the estate of defendant P.L. Snead has not been properly asserted.

The undisputed facts, as revealed by the evidence of record and the parties' agreed summary contained in the pre-trial order, are as follows: This case arises out of the activities of defendants as directors and officers of the Cedar Bluff Bank. On November 2, 1982, the Board of Directors of the Cedar Bluff Bank requested that the Superintendent of Banks for the State of Alabama take possession of the property and business of the Bank pursuant to ALA. CODE § 5–8A–20 et seq. (Exhibit A to plaintiff's motion.). The Superintendent ordered the Bank closed and appointed the F.D.I.C. to act as receiver of the bank. (Exhibits B, C). This appointment was confirmed by the Circuit Court of Cherokee County, Alabama on the same date. (Exhibit D). On the next day, November 3, 1982, the F.D.I.C. sold, for a valuable consideration, certain of the bank's assets to an "assuming bank," the Union State Bank of Cedar Bluff, Alabama. (Exhibit E). The F.D.I.C., acting as receiver, sold to F.D.I.C. in its corporate capacity, the remaining assets, including "all pending claims, actions or judgments, whether known or unknown, which the Receiver owns, holds, or has against any surety, insurer, or any person or persons whomsoever, including, without being limited to, any claim or claims against its directors, officers, or employees arising out of any act or acts of any such persons in respect to the Bank or its property, by virtue of the nonperformance or manner of performance of their duties...." (Exhibit F at § 1.1). The sale of these assets, both to the assuming bank and to F.D.I.C.—Corporate, was approved by the Circuit Court of Cherokee County, Alabama on November 3, 1982. (Exhibit 6).

Despite the somewhat confusing label of "F.D.I.C., in its corporate capacity as receiver of the Cedar Bluff Bank" which the F.D.I.C. occasionally chose to give itself in this action, it now appears undisputed that the F.D.I.C. seeks to bring this action in its corporate capacity only, and not in any respect in the capacity of receiver of the Cedar Bluff Bank. See the "Agreed Summary" contained in the pre-trial order filed April 27, 1984. As such, it is clear that this court has jurisdiction over this action pursuant to 12 U.S.C. § 1819, which states:

All suits of a civil nature ... to which the [F.D.I.C.] shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof ... except that any such suit to which the [F.D.I.C.] is a party in its capacity as receiver of a State bank and which involves only the rights or obligations of depositors, creditors, stockholders, and such State bank under State law shall not be deemed to arise under the laws of the United States.

12 U.S.C.A. § 1819. *See also F.D.I.C. v. Ashley,* 585 F.2d 157 (6th Cir.1978); *F.D. I.C. v. Godshall,* 558 F.2d 220, (4th Cir. 1977); *F.D.I.C. v. Braemoor Associates,* 686 F.2d 550 (7th Cir.1982), *cert. denied,* — U.S. —, 103 S.Ct. 2086, 77 L.Ed.2d 297.

■ The F.D.I.C. while acting as receiver of the Cedar Bluff Bank was similarly clearly within the scope of its authority when it assigned some of the assets of the bank to F.D.I.C.—Corporate. Title 12 U.S.C. § 1823(c)(2)(A)(i) provides that: "In order to facilitate ... the sale of assets of [an] insured bank and the assumption of such insured bank's liabilities by an insured institution ... the [F.D.I.C.] is authorized in its sole discretion and upon such terms and conditions as the [F.D.I.C.'s] Board of Directors may prescribe—(i) to purchase any such assets or assume any such liabilities...." Title 12 U.S.C. § 1823(d) also provides that:

> Receivers or liquidators of insured banks ... shall be entitled to offer the assets of such banks for sale to the [F.D. I.C.] ... upon receiving permission from the appropriate State authority in accordance with the express provisions of State law.... The [F.D.I.C.] in its discretion, ... may purchase and liquidate or sell any part of the assets of an insured bank which is now or may hereafter be closed on account of inability to meet the demands of its depositors, but in any case in which the [F.D.I.C.] is acting as receiver of a closed insured bank, no such loan or purchase shall be made without the approval of a court of competent jurisdiction.

12 U.S.C.A. § 1823(d). As discussed later in this opinion, it appears that the F.D.I.C. —Receiver has complied with state law in transferring the "asset" in question to F.D. I.C.—Corporate and has obtained the required court approval.

The defendants have argued that 12 U.S.C. § 1821(d)[1] "limits the authority of the F.D.I.C. as a receiver of a state bank to those powers, rights and privileges granted by state law to a receiver of a state bank." 12 U.S.C. § 1821(e) does indeed provide that "the [F.D.I.C.] as such receiver *shall possess* all the rights, powers and privileges granted by State law to a receiver of a State bank." 12 U.S.C.A. § 1821(e) (emphasis added). The court does not read this to *limit* the rights, powers and privileges of the F.D.I.C. as receiver, particularly in view of the provisions of 12 U.S.C. § 1823(c)(2)(A)(i) which authorize the purchase of a closed bank's assets by the F.D.I.C. In any event, ALA.CODE § 5-8A-24 grants receivers the power to "liquidate and distribute the *assets* of any bank taken possession of by the [state banking] superintendent." (emphasis added). Prior Alabama cases have apparently held that a tort cause of action against the directors of a closed state bank is an "asset" which can be assigned.[2] *See Buck v. Gimon,* 201 Ala. 619, 79 So. 51 (1918); *Blythe v. Enslen,* 219 Ala. 638, 123 So. 71 (1929); *Houghton v. Enslen,* 261 F. 113 (5th Cir. 1919). Defendants have been unable to cite the court to any Alabama law which would cast doubt on the holdings of these cases.

ALA.CODE § 5-8A-32 authorizes the *ex parte* court approval of the sale of a closed bank's assets pursuant to a purchase and assumption transaction such as occurred in the case at bar. ALA.CODE § 5-8A-34 also provides that "The receiver, upon the order of the receivership court which may be *ex parte,* may sell to [the F.D.I.C.] any part or all of the assets of [the closed] bank." State court approval, as mentioned earlier, was obtained for the sale of the "asset" in question by the receiver (F.D.I. C.—Receiver) to F.D.I.C.—Corporate. *See* Exhibit G.

---

1. Defendants presumably mean 12 U.S.C. § 1821(e).

2. This would appear to be an exception to the general rule that a tort cause of action cannot

be assigned. *See generally Southern Railway Co. v. Stonewall Ins. Co.,* 177 Ala. 327, 58 So. 313 (1912); *City of Birmingham v. Walker,* 267 Ala. 150, 160–61 101 So.2d 250 (1958).

The Eleventh Circuit has clearly recognized that the F.D.I.C. may act in both its corporate capacity and in its capacity as a receiver with respect to the same bank. *See Gunter v. Hutcheson*, 674 F.2d 862, 873–74 (11th Cir.1982) ("[T]he division of authority between the F.D.I.C. as receiver and F.D.I.C. as corporate insuror is statutorily mandated.... Section 1823(d), moreover, clearly contemplates transactions between the F.D.I.C. as receiver and F.D.I.C. as corporate insurer...." 674 F.2d at 873). The court in *Gunter* does state that the transfer between F.D.I.C.—Receiver and F.D.I.C.—Corporate must be "in good faith for value" before this court properly acquires jurisdiction under 12 U.S.C. § 1819. *See Gunter, supra*, 674 F.2d at 874, n. 16. There has been no assertion by defendants that the transfer was not in good faith or for value. The mere fact that the transfer creates federal jurisdiction is not, in this court's view, "bad faith" which would void this court's jurisdiction.

For the above-stated reasons, the court concludes that plaintiff's Motion for Summary Judgment is due to be granted with respect to the jurisdictional and assignability aspects of defendants' defenses. (Defendants' second, fourth, fifth and sixth defenses).

■ The court is also of the opinion that plaintiff's motion for summary judgment is due to be granted with respect to defendants' statute of limitations defense. Defendants argue that the F.D.I.C., by reason of its periodic audits of the books of the Cedar Bluff Bank, had knowledge of the alleged mismanagement of the bank by defendants prior to November 2, 1982, the date on which the F.D.I.C. was appointed receiver of the bank. Since the complaint was filed November 1, 1983, defendants argue that the one-year Alabama statute of limitations has run. It is clear that when "the government acquires a derivative claim, whether by assignment, subrogation, or by other means, and that claim is not *then* barred by the state statute of limitations, the state statute ceases to run against the government at the time of such

acquisition." *United States v. Sellers*, 487 F.2d 1268, 1269 (5th Cir.1973) (emphasis added). The federal statute of limitations of three years would then become applicable. *See* 28 U.S.C. § 2415(b). The determinative question under either statute of limitations is when the statute began to run. It appears that under Alabama law a cause of action against a corporation's board of directors for breach of fiduciary duty does not accrue as long as they remain in control of the corporation. *See Greenleaf v. Profile Cotton Mills*, 235 Ala. 530, 180 So. 582 (1938); *Glass v. Stamps*, 213 Ala. 95, 104 So. 237 (1925); *Montgomery Light Co. v. Lahey*, 121 Ala. 131, 25 So. 1006 (1898). Defendants remained in control of the Cedar Bluff Bank until November 2, 1982, and the one-year Alabama statute could therefore not have run in their favor prior to the assignment to the F.D.I.C. It is possible that the F.D.I.C. could have known of the acts of mismanagement made the basis of this action for more than three years prior to the date this suit was brought, but the court is of the opinion that such knowledge could not have caused the federal statute of limitations to begin running prior to November 2, 1982, when the F.D.I.C. was appointed receiver. Before that date, the F.D.I.C. had no legal authority to bring suit on behalf of the bank against its directors, who were still in control of the bank's business. The court is also persuaded that the F.D.I.C.'s knowledge acquired through its examinations of open banks is not properly held against the F.D.I.C.'s activities following the closing of a bank. The Eleventh Circuit recently stated in an analogous situation:

In the ordinary course of business, examiners from F.D.I.C.'s open-bank division regularly visit all insured banks and even more frequently visit failing banks. If in undertaking a purchase and assumption transaction F.D.I.C.'s closed-bank division were held to matters of which the open-bank examiners had actual knowledge ... [t]he resulting uncertainty would undercut F.D.I.C.'s ability to value assets quickly and precisely when con-

ducting a purchase and assumption transaction.

725 F.2d at 640. Since this action was filed well within three years after the date the F.D.I.C. could have first filed suit against defendants, the statute of limitations is not a bar to this action and plaintiff's motion for summary judgment is due to be granted with respect to defendants' third defense. *See also F.D.I.C. v. Bird,* 516 F.Supp. 647 (D.P.R.1981); 19 Am.Jur.2d *Corporations* § 551 at 85 n. 15.

Finally, the court reserves judgment on the non-claims statute issue. As stated in *King v. Coosa Valley Mineral Products Co.,* 283 Ala. 197, 205, 215 So.2d 275 (1968):

> The rule in this state is that the requirement of presentation of claims against an estate is inapplicable to the claim of a cestui que trust for whom the decedent was trustee *so long as the trust fund or property can be traced* and the trust enforced by appropriate proceedings. This is for the reason that the cestui que trust is seeking his own property only, and is not seeking to enforce a claim against the estate and property of the decedent.

283 Ala. at 205, 215 So.2d 275 (emphasis added). It is apparent that the director of a corporation is in a fiduciary relationship with the corporation and its stockholders. Two questions arise with respect to plaintiff's attempted application of this exception to the non-claims statute to the facts of this case. First, is a director a *trustee* so that the exception would apply? *See Blount County Bank v. Harvey,* 215 Ala. 566, 112 So. 139 (1927). "it is a sound and well-settled rule of law that the directors of a private corporation, *although not technically trustees,* occupy a fiduciary relation, and are required to exercise their best judgment and care in the interest of the corporation...." (emphasis added). Secondly, if a director is such a trustee, does it have to be shown that he personally benefited from his negligence in order for the exception to apply, as is implied by the requirement that the trust fund be traceable? The parties are invited to further

address these issues by letter brief if they so desire. The court will reserve judgment on this issue for the present time.

An order in conformity with this Memorandum Opinion will be entered contemporaneously herewith. The plaintiff is directed to submit a proposed order within five days. Defendants will have five days to respond.