FEDERAL DEPOSIT INSURANCE
CORPORATION, Plaintiff,

v.

Cale HUDSON and Larry
Hudson, Defendants.

Civ. A. No. 86–2236–S.

United States District Court,
D. Kansas.

Nov. 5, 1987.

James R. Goheen, Charles A. Getto, McAnany, Van Cleave & Phillips, P.A., Kansas City, Kan., for plaintiff.

Joe B. Whisler, Kansas City, Mo., John C. Rubow, Chanute, Kan., Edward W. Dosh, Law Offices of Edward W. Dosh, Parsons, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendant Larry D. Hudson's (Hudson) motion for summary judgment. Hudson argues all claims remaining against him are time-barred, pursuant to the Kansas Statute of Limitations, K.S.A. Section 60–512.

Plaintiff brought suit against Hudson and four other directors and officers of the First State Bank of Thayer, Kansas (Bank), after the Bank was closed by the Kansas

State Bank Commissioner on August 22, 1984, upon a determination of insolvency. The Federal Deposit Insurance Corporation (FDIC) immediately accepted appointment as bank receiver. The FDIC, acting in its capacity as receiver (FDIC/receiver), then sold several of the Bank's assets to the FDIC in its corporate capacity (FDIC/corporate). Included in those assets were all claims against the Bank's directors and officers "arising out of any act or acts of any such persons with respect to the Bank or its property, by virtue of the nonperformance or manner of nonperformance of their duties."

The uncontroverted facts for purposes of this motion are as follows:

1. Defendant Hudson was a member of the Bank's Board of Directors (Board).

2. In November 1982, Hudson filed suit against his brother, Cale Hudson, who was the Board chairman and majority owner of the Bank. Hudson claims the purpose of this suit was to block his removal as a member of the Bank's Board. The plaintiff characterizes the suit as one focusing on the overall business dispute between Hudson and his brother.

3. Hudson claims he objected to the Bank's loan practices as early as August, 1982. He claims that in December 1982 and January 1983, these objections were spread upon the minutes of the Bank. FDIC/corporate claims those complaints only addressed loans made to Cale Hudson and/or his businesses.

4. Hudson claims his complaints to the Board were thereafter ineffectual.

5. Hudson last attended a Board meeting on April 11, 1983.

6. Hudson was removed from the Board on June 23, 1983.

7. Up until the date of closing of the Bank on August 22, 1984, the Board consisted of one or more of the defendants in the present consolidated cases. From June 25, 1983 to the date of closing, the Board included Cale Hudson, Joseph Newby, and William Dickerson. On the date of Larry Hudson's removal, Larry Strange was also on the Board.

8. FDIC/corporate filed this suit on May 23, 1986, claiming breach of fiduciary duty, negligence, violations of state limitations on loans, and gross negligence in loan policies and practices.

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). An issue of fact is "material" only when the dispute is over facts that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). The language of Rule 56(a) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986).

Plaintiff argues that K.S.A. 60–512 applies to this action, and that the period of limitation is therefore three years. That provision reads as follows: "The following actions shall be brought within three (3) years: (1) All actions upon contracts, obligations or liabilities expressed or implied but not in writing. (2) An action upon a liability created by a statute other than a

penalty or forfeiture."[1] He argues that the causes of action before this court accrued when the alleged wrongful acts occurred; the alleged wrongful acts charged are the approval of bad loans. Hudson points out that he made objections to the Bank's lending practices at meetings in December 1982 and January 1983. Therefore, no wrongful acts occurred after those dates. Since the action was not filed until more than three years later—on May 23, 1986—all claims are barred by the statute of limitations. At the latest, Hudson contends that the statute should begin running on April 11, 1983, the date of the last Board meeting he attended. He argues that as of that date, he was no longer able to influence the actions of the Board. Again, this would mean the action was filed outside the three-year statute of limitations.

■ Plaintiff is correct in pointing out that the state statute of limitations is not the only relevant time limitation here. The court holds that 28 U.S.C. § 2415 applies in this case, and that the FDIC/receiver's cause of action against the officers and directors did not accrue until the FDIC acquired the legal right to bring suit. This occurred on the day the FDIC accepted appointment as receiver: August 22, 1984.

■ By holding that the FDIC's cause of action accrues upon its appointment as receiver of a failed bank, this court is in accord with several other federal courts which have made similar holdings. *See, e.g., FDIC v. Buttram*, 590 F.Supp. 251, 254 (N.D.Ala.1984); *FSLIC v. Williams*, 599 F.Supp. 1184, 1193 (D.Md.1984). Those courts have found that if a cause of action is not time-barred when the federal agency acquires it, the state statute of limitation ceases to operate and the federal period of limitation, 28 U.S.C. § 2415, begins. They based their decisions on the fact that before the federal agency is appointed as receiver, it has no authority to bring suit on behalf of the bank. Furthermore, the court in *Buttram* relied in part on the ruling in *United States v. Sellers*, 487 F.2d

1268, 1269 (5th Cir.1973). The Fifth Circuit in that case stated that when "the government acquires a derivative claim, whether by assignment, subrogation, or by other means, and that claim is not then barred by the state statute of limitations, the state statute ceases to run against the government at the time of such acquisition." *See Buttram*, 590 F.Supp. at 254.

The court is not aware of any federal authority to the contrary, and finds that such a rule is in accord with the language of 28 U.S.C. § 2415.

Therefore, the court is faced with a two-step analysis: First, it must determine whether the causes of action against Hudson were time-barred under K.S.A. 60–512 when the FDIC received them. Second, the court must determine whether the claims are time-barred under the applicable federal statute of limitations.

In order to determine whether the causes of action were time-barred under K.S.A. 60–512 when FDIC received them, we must determine when the causes of action accrued. The parties propose different methods for doing this. Defendant claims the causes of action accrued when the wrongful acts occurred; therefore, the statute would begin running when each of the bad loans was approved by the Board. This would mean that Hudson could be sued only for those loans approved by him on or after May 23, 1983. Defendant cites a series of cases decided before the Great Depression which hold that a cause of action accrues when the improvident loans are made. *See, e.g., Curtis v. Connly*, 257 U.S. 260, 42 S.Ct. 100, 66 L.Ed. 222 (1921) (since stockholders of the bank had a right to inspect the books at any time, the bank was charged with knowledge of the improvident loans, and the cause of action accrued at that time); *Corsicana Nat'l Bank of Corsicana v. Johnson*, 251 U.S. 68, 40 S.Ct. 82, 64 L.Ed. 141 (1919) (injury became complete and cause of action accrued when bank parted with the loan proceeds); *Hughes v. Reed*, 46 F.2d 435 (10th Cir.1931) (stockholders and National Bank Examiners charged with knowledge of information

---

1. A two-year statute of limitations may apply in this case, *see* K.S.A. 60–513, since in its order of September 9, 1986, this court found that the

remaining claims sounded in tort. However, the court need not decide for purposes of this motion which period applies.

in Bank's books, and any causes of action accrued at time improvident loans were shown on the books); *see also McNair v. Burt,* 68 F.2d 814 (5th Cir.1934); *Payne v. Ostrus,* 50 F.2d 1039 (8th Cir.1931); *Anderson v. Gailey,* 33 F.2d 589 (D.Ga. 1929); *Mobley v. Faircloth,* 174 Ga. 808, 164 S.E. 195 (1932).

Plaintiff advocates the more modern "adverse domination" method for determining when a cause of action against a bank's officers and directors accrues. This approach reasons that as long as a bank is dominated by the same wrongdoers against whom a cause of action exists, the statute of limitations is tolled. The rationale behind this theory is that the wrongdoers cannot be expected to bring an action against themselves. Only when a new entity takes control of the bank, be it a receiver or a new board of directors, can suit against the wrongdoers be brought as a practical matter. Applied here, the adverse domination theory would dictate that the causes of action against Hudson did not accrue at least until Hudson left the Board in June of 1983. The statute may not have begun running until the "control group"— his fellow alleged wrongdoers and co-defendants—left the Board upon the Bank's closing in August of 1984.

Plaintiff finds support for its theory in recent case law from other federal district courts. The U.S. District Court in Puerto Rico took the lead in the acceptance of the "adverse domination" theory. In *FDIC v. Bird,* 516 F.Supp. 647 (D.P.R.1981), the court rejected the defendant's advocation of the pre-Depression law of *Corsicana* and *Curtis.* Instead, the court recognized "the realities of the shareholders' position, that, without knowledge of wrongful activities committed by directors, shareholders have no meaningful opportunity to bring suit." 516 F.Supp. at 651. The court reasoned it would deny logic to assume that the same individuals who allegedly committed a wrong would bring suit against themselves, or to assume that despite the directors' control of the institution, the stockholders would have sufficient knowledge of the wrongdoing to bring suit themselves. Control of the institution implies control of information.

The court went on to question the value of the pre-Depression cases as legal precedent.

> One need only recall the financial and economic disaster which befell the nation in 1929 and which led to various nationwide programs, including creation of the FDIC, (footnote omitted), to realize that earlier doctrines are suspect and subject to reexamination. Reference to more recent precedents is enlightening. In 1933 a new philosophy of corporate relationships and responsibilities was expressed ... [t]he emphasis has shifted from a right of shareholders to inspect corporate records and affairs to a duty of corporate managers to disclose.

516 F.Supp. at 651–52.

Other federal district courts followed the lead of the Puerto Rican court in *Bird,* recognizing the historical posture of the pre-Depression cases and the realities of corporate operation today.

The court in *FSLIC v. Williams* began its analysis by citing the widely-accepted proposition that the "statute is tolled while a corporate plaintiff continues under the domination of ... wrongdoers." *Williams,* 599 F.Supp. at 1193 (citing 3A *Fletcher Cyclopedia Corporations,* § 1306.2 (1975)). The court went on to point out that control of the institution by the wrongdoers "precludes the possibility of filing suit because these individuals can hardly be expected to sue themselves." 599 F.Supp. at 1194. The court dismissed the argument that others have access to the books of the institution and have a right to sue, by pointing out that control of the institution includes the power to conceal incriminating information. 599 F.Supp. at 1194.

> While [the culpable directors] retain control they can dominate the non-culpable directors and control the most likely sources of information and funding necessary to pursue the rights of the association. As a result, it may be extremely difficult, if not impossible, for the corporation to discover and pursue its rights while the wrongdoers retain control.

599 F.Supp. at 1193–94, n. 12. The court also pointed out that a stockholder's failure to use due diligence in discovering the

wrongdoing may be excused since a fiduciary duty exists between the members of a board and the stockholders. 599 F.Supp. at 1194–95. The wrongdoing was not effectively discoverable until the culpable directors relinquished control of the institution; a cause of action does not accrue until it is discoverable by someone who has the legal authority to bring the action. 28 U.S.C. § 2416.[2]

Also following the lead of *Bird* were the U.S. District Court for the Eastern District of Tennessee, *see FDIC v. Dempster*, 637 F.Supp. 362 (E.D.Tenn.1986); *FDIC v. Berry*, 659 F.Supp. 1475 (E.D.Tenn.1987), and the District Court in the Northern District of Alabama, *see FDIC v. Buttram*.

■ This court believes that Kansas would follow the sound reasoning of the *Bird* case and those that followed, and would adopt the modern "adverse domination" theory. Not only is this approach in line with the Kansas principle that an action does not accrue until discoverable by a party entitled to bring the action, *see* note 2, *supra*, but it also recognizes the post-Depression approach to corporate responsibility and the realities of corporate control by directors.

■ Turning to the facts of this case, the adverse domination theory dictates that the causes of action against Hudson did not accrue at least until he left the Board on June 23, 1983. Until that time, Hudson was a member of the Bank's "control group," and could not be expected to bring suit against himself. Nor could his fellow directors be expected to bring suit against him for wrongfully approving the same loans they approved. The court need not decide whether the statute continued to be tolled until the rest of Hudson's "control group" stepped down upon the Bank's closure on August 22, 1984. Even if the causes of action accrued on the earlier date —June 23, 1983—this action is not time-barred.

The causes of action against Hudson were not time-barred when the FDIC/receiver acquired them in August of 1984; only fourteen months of the three-year limitation period had passed by that time. Once FDIC/receiver acquired the causes of action, the state statute of limitations ceased to operate and the federal limitations period began to run. Title 28, United States Code, Section 2415(a) provides for a six-year period for actions sounding in contract; subsection (b) allows three years for a tort action. The court need not decide which of the two provisions applies.[3] Even under the shorter limitations period, the plaintiff filed this action in time. The federal statute began to operate on August 22, 1984, and this action was filed on May 23, 1986. Less than two years of the three-year period had expired. Therefore, plaintiff's action was timely filed, and defendant's motion must be denied.

IT IS BY THE COURT THEREFORE ORDERED that defendant Larry D. Hudson's motion for summary judgment is denied.

---

2. This is also a well-accepted principle of Kansas law; *see Pancake House, Inc. v. Redmond*, 239 Kan. 83, 716 P.2d 575 (1986); *Clark Jewelers v. Satterthwaite*, 8 Kan.App.2d 569, 662 P.2d 1301 (1983).

3. It is likely subsection (b) would apply in light of this Court's ruling on September 9, 1986, *see* note 1, *supra*.